STANDARD DENTAL MFG. CO. v. NATIONAL TOOTH CO.

(Circuit Court, E. D. Pennsylvania. June 27, 1899.)

1. PATENTS—JURISDICTION OF FEDERAL COURTS—FORFEITURE OF LICENSE.
    The federal courts have no jurisdiction, under the patent laws, of a bill which seeks first to have a license declared forfeited for nonperformance of conditions, and then to have the acts of defendants declared an infringement, and the usual remedies of injunction and accounting decreed. The proper course would be to obtain a decree of rescission from a state court, and then sue for infringement in a federal court.

2. SAME—FORFEITURE OF LICENSE.
    A license does not become ipso facto void on a failure to pay royalties, even if it contain an express stipulation to that effect. It will remain in force, so as to defeat a suit against the licensee for infringement, until it has been rescinded by decree of a court having jurisdiction.

Thomas D. Mowlds, for complainant.
William A. Redding, for respondent.

GRAY, Circuit Judge. This case came on to be heard upon the demurrer of the defendant to the bill of complaint. The bill of complaint states that both the complainant and the defendant are corporations chartered under the laws of Pennsylvania, and doing business in that state; that Alfred Page and Samuel S. Bloom, residents in Philadelphia, in said state, are the original joint and first inventors of a new and useful improvement in artificial teeth; that, being such original joint and first inventors, an application was made for letters patent, which were, in due course, granted to the said Page and Bloom, bearing date the 3d day of June, 1890, and numbered 429,285; that the said Alfred Page and Samuel S. Bloom, being the sole owners of all rights under the aforesaid patent of June 3, 1890, by an instrument of writing bearing date the 9th day of December, 1896, granted and conveyed to the said National Tooth Company a license to manufacture artificial teeth, made in accordance with the specifications of said patent. The bill then proceeds to aver as follows:

"(4) That the National Tooth Company, shortly after the 9th day of December, 1896, commenced to manufacture artificial teeth under the aforesaid license;

and, in consideration of the payment of the royalty at the times and in the amounts as agreed upon, the said Alfred Page and Samuel S. Bloom permitted the National Tooth Company to make and use during the continuance of the ·said license a certain new and useful improvement in molds for artificial teeth, of which they were the original joint and first inventors, and which had not been known or used by others before their invention or discovery thereof, and for which at that time they had not obtained letters patent. (5) That, so being the original joint and first inventors of said new and useful improvement in molds for artificial teeth, which said improvement had not been known or used by others in this country before their invention or discovery thereof, and had not been patented or described in any printed publication before their invention, or more than two years before their application for a patent thereon, and was not in public use or on sale for more than two years prior to their application for letters patent of the United States, the said Alfred Page and Samuel S. Bloom did in due form of law make application for letters patent of the United States for said improvement in molds for artificial teeth, and thereupon such proceedings were had that letters patent of the United States for said invention numbered 613,711, bearing date the 8th day of November, 1898, were in due form of law issued and delivered unto the said Alfred Page and Samuel S. Bloom, whereby there was secured to the said Alfred Page and Samuel S. Bloom for the term of 17 years from the said 8th day of November, 1898, the exclusive right to make, use, and sell the said invention throughout the United States and the territories thereof, which by said letters patent, ready in court to be produced, will more fully and at large appear. (6) That the said the National Tooth Company has been, since the 9th day of December, 1896, making and selling artificial teeth under the license granted to it on that day, and has since that time been, and is now, using the said form of mold for making said artificial teeth, and on the 31st day of January, 1898, made returns and paid Alfred Page and Samuel S. Bloom a royalty or license fee of $609.60, being the royalty upon 15,240 sets of teeth, calculated at the rate of four cents per set; the said Alfred Page and Samuel S. Bloom having agreed to reduce the aforesaid royalty to four cents per set in place of ten cents, as set out in the original agreement of December 9, 1896. (7) That the said Alfred Page and Samuel S. Bloom did, by an instrument of writing bearing date the 26th day of November, A. D. ——, for a valuable consideration assign and transfer unto the said Standard Dental Manufacturing Company all of their right, title, and interest in the United States letters patent of June 3, 1890, and numbered 429,285; also all right to any royalty or license fee that might be due, and the right to any and all damages that might have accrued prior to the date of the assignment, as by said instrument of writing, ready in court to be produced, will more fully appear, and the said Alfred Page and Samuel S. Bloom, by an instrument of writing bearing date the 9th day of November, A. D. 1898, duly assigned unto your orator the entire right, title, and interest in and to the United States letters patent numbered 613,711, and dated the 8th day of November, 1898, and the invention thereby secured, as by reference to said instrument of writing, ready in court to be produced, will more fully and at large appear. (8) That since the 31st day of January, 1898, the said National Tooth Company has not paid to the said Alfred Page and Samuel S. Bloom, or either of them, nor to the said Standard Dental Manufacturing Company, any money on account of the royalty due under the agreement of December 9, 1896, or on any other account; and, in accordance with the stipulated terms of said agreement, it has become null and void, and not ·binding on either of the parties thereto. * * * And so it is that the said defend·ant, as your orator is informed and believes, without the license of your orator, and against its will, and in violation of its rights, has, since the 31st day of January, 1898, made and sold, and is now making and selling, and intends to make and sell, the said patented improvement in artificial teeth within the United States, and especially within the Eastern district of Pennsylvania, and has, since the 9th day of November, 1898, without the license of your orator, and against its will, and in violation of its rights, made and used, and is now making and using, and intends so to make and use, the said patented improvement in molds for artificial teeth within the United States, and especially within the Eastern district of Pennsylvania, all of which is in violation of

your orator's rights, as secured by said several letters patent and the assignments thereof."

The bill then prays for an account of income and profits derived from making the patented artificial teeth, or from making, using, or selling any such teeth containing the improvement covered by said letters patent of June, 1890, No. 429,285; also for an account of income and profits for making, using, and selling the patented molds for artificial teeth covered by letters patent of November 8, 1898, and numbered 613,711. The bill then prays "that the defendant, by a decree of this court, may be compelled to deliver up to your orator, for cancellation, the agreement dated December 9, 1896, and made by Alfred Page and Samuel S. Bloom with the defendant, and by it recorded in the patent office, at Washington, on December 2, 1897." The bill then concludes with a prayer for an injunction, preliminary and permanent, and an assessment of damages in addition to the profits accounted for. The bill states that a copy of said license is annexed thereto, marked as an exhibit, and made a part of the bill, and the same is printed with the bill as filed. The said license, after the grant of the exclusive right to manufacture, sell, or dispose of under and by virtue of the said letters patent, in consideration of a royalty thereby reserved, contains the following stipulation:

"In consideration of the foregoing grant, transfer, etc., made by Alfred Page, of Philadelphia, Pa., and Samuel S. Bloom, of Bridgeton, N. J., the National Tooth Company agree to manufacture, sell, and pay the royalties on not less than 25,000 sets of teeth yearly, and, in the event of their failure to comply with the above-stipulated terms, this contract shall be null and void, and not binding on either party hereto."

To this bill the defendant demurs upon two grounds: First, that the bill is multifarious, in that it joins with one bill suits for the infringement of two patents; second, that the court has no jurisdiction to give the relief prayed for. The theory upon which this bill is framed seems to be that the license under which defendant was authorized to manufacture and sell and use the articles and improvements covered by the patents has been forfeited by the failure of the defendant to comply with the terms of the contract as to payment of royalty; that complainant therefore has a right to invoke the power of this court, as a court of equity, to declare the said forfeiture of said contract, and order the cancellation of the articles of agreement containing said license, and then, that being accomplished, that this court should, in the exercise of its jurisdiction under the patent laws of the United States, declare all manufacture, sale, and use of the said patented articles and improvements since the forfeiture to be infringements of the patent monopoly of complainant, and that the usual remedy of an account and an injunction in patent suits should be accorded it. The facts concerning the license and the nonpayment of royalties stipulated for are sufficiently set out to form the basis for the principal question raised by the demurrer. The jurisdiction of this court is, in a sense, special, and must appear upon the face of the bill. As it appears by the statement in the bill that both complainant and defendant are corporations of the state of Pennsylvania, and, therefore, for the purposes of jurisdiction, citizens of that state, there can be no jurisdiction of a cause of action arising

out of the contract of license set forth in the bill of complaint. The failure to pay the royalties, upon which the claim of forfeiture is grounded, is a breach of contract, cognizable in a court of common law. That and the cancellation of the contract of license, or other equitable remedy in that regard, are all matters justiceable in a state court, but, in the absence of diverse citizenship, are clearly outside the jurisdiction of a federal court. It will not do to say that a forfeiture has taken place, ipso facto, by the nonpayment of the stipulated royalties, and that, therefore, all handling of the patented articles by defendant since then has been an infringement. The law does not arm one party to a contract with the power to determine in his own favor a condition of this kind, and thus produce for the other party to the contract all the disabilities and consequences that would follow a forfeiture legally ascertained and declared. Even where the contract provides that the failure to pay shall render it null and void, the defendant has a right to be heard as to the facts upon which such annulment is made to depend. Forfeitures are not favored in equity, and the best-considered "decisions hold that even licenses containing express stipulations for their forfeiture are not, ipso facto, forfeited upon condition broken, but remain operative and pleadable until rescinded by a court of equity." 2 Rob. Pat. § 822; White v. Lee, 3 Fed. 222; Adams v. Meyrose, 7 Fed. 208; Baker Mfg. Co. v. Washburn & Moen Mfg. Co., 18 Fed. 172; Purifier Co. v. Wolf, 28 Fed. 814.

The obvious and logical course for the complainant in this case would be either to sue for damages for the nonpayment of royalties, or, by a bill in equity, seek the rescission of the contract of license, and, that being obtained, to pursue the defendant in a federal court for an infringement; but in the case at bar the complainant seeks a rescission of the contract and a remedy for infringement in the same bill. The jurisdiction of this court, as we have already said, can only attach, if it attach at all, by reason of the provisions of the patent law of the United States, which specially confers jurisdiction in cases arising under it. But in this case the complainant, in its bill, sets up a license, which, prima facie, protects the defendant in regard to the acts complained of, but which complainant says has been forfeited by the nonperformance by defendant of its stipulated payment of royalty, and for which it asks this court to order the said contract of license to be delivered up and canceled. No suit for infringement can therefore lie until after this matter of the forfeiture is determined. This becomes and is the principal subject-matter of the present suit, and of that, as we have already shown, this court has no jurisdiction. The supreme court has so distinctly supported this view in the cases of Wilson v. Sanford, 10 How. 99, and Hartell v. Tilghman, 99 U. S. 547, that they must be considered as controlling the decision of the question here discussed. This case, then, does not arise under any law of the United States, and, as has been before pointed out, this court is without jurisdiction to entertain a suit on the contract of license, either for the payment of royalties or the rescission and cancellation of the contract itself, and is therefore without jurisdiction at all, and the bill must be dismissed.