## GLOBE STEEL ABRASIVE CO. v. NATIONAL METAL ABRASIVE CO.
### No. 7638.

Circuit Court of Appeals, Sixth Circuit.
Feb. 8, 1939.

**490**

F. J. Perkins, of Cleveland, Ohio (Mc-Keehan, Merrick, Arter & Stewart, of Cleveland, Ohio, and Weil, Christy & Weil and Brown, Critchlow & Flick, all of Pittsburgh, Pa., on the brief), for appellant.

John Chamberlain, of Cleveland, Ohio (Chamberlain & Royon, of Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

Begun as a patent infringement suit, the controversy presented by this appeal now revolves about the validity of a release and license asserted by the appellee in confession and avoidance but challenged by the appellant as having been obtained by fraud. Judgment of dismissal was entered below on the pleadings.

Both parties being Ohio corporations and the suit having been turned by the answer and replication from one for patent infringement to one requiring adjudication of the validity of a written instrument, a question of jurisdiction appears, which, suggested below, though pressed neither there nor here, nevertheless requires our attention. Actions brought to enforce contracts between private parties relevant to patent rights are not generally actions arising under the patent laws of the United States and therefore are not cognizable as such in the United States courts, and actions to set aside such contracts fall in the same category. 1 Walker, Patents, 6th Ed. 531; Standard Dental Mfg. Co. v. National Tooth Co., C.C., 95 F. 291; Wade v. Lawder, 165 U.S. 624, 17 S.Ct. 425, 41 L.Ed. 851. So it has been held that where the complainant states a patent right, its use by the defendant and a license claim by the latter as justification for that use, but avers the non-existence of such license, and where the defendant admitting the patent right and use defends only on the ground of license, the action is not one arising under the patent laws. Hartell v. Tilghman, 99 U.S. 547, 25 L.Ed. 357. Where, however, the suit is for infringement of patent without reference to

license, and the defense, though not traversing the bill asserts a license by way of confession and avoidance, there is jurisdiction, and the decision in Hartell v. Tilghman does not control, since if it did an infringer might defeat every suit by making one defense in the State court and another in the Federal court, and it is now settled that where one is sued as a naked infringer the jurisdiction cannot be ousted by any answer which the defendant may interpose. Walker, supra, 534; Luckett v. Delpark, Inc., 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703. That is the situation here.

Since the case was decided upon the pleadings they must be read in the light most favorable to the statement of a cause of action. The appellant is the owner as assignee of Martin Patent No. 1,886,285, relating to a process for making metal abrasive materials. The petition charges infringement, due notice of ownership and demand that infringement cease, alleges loss of profits and the withholding of royalties, and seeks treble damages. The defendant in its answer admits notice of infringement but denying knowledge of the patent prior to the notice avers that as promptly as possible after notification it discontinued the patented process and removed from its plant the apparatus by which it was practiced. The answer then alleges that effective as of August 1, 1934, the plaintiff had given the defendant a release discharging it from all liability on account of things done prior to August 1st, and a license for the practice of its patented process subsequent to August 1st, and denies the validity of the patent and its infringement.

To the defendant's answer the plaintiff rejoins that it had by letter of November 19, 1934, rescinded the release and license agreement as having been obtained by fraud. Discursive and verbose though the replication be, it alleges with sufficient clarity as inducements to the execution of the release and license agreement the withholding from it by the defendant of all information that the practice of the patented process had been discontinued before the end of April and that the machines for its practice had been removed from its plant, and the fact that statements oral and written had been made by which it was led to believe that the defendant had used the patented processes continuously since 1931, that it would avail itself of the license, and

that the royalties which the plaintiff would receive through the license contract would be substantial.

Upon demurrer to the replication, the District Judge, though conceding the principle that fraud may be predicated on promises made with an intention not to perform, held it inapplicable because the reply did not aver a promise by the defendant to use the patented process and denied the plaintiff's request for leave to amend on the ground that if it averred such promise it would conflict with a written contract which contained no such promise, and so violate the parol evidence rule. He thereupon entered judgment for the defendant upon the pleadings.

 It requires no citation of authority for the principle that concealment of a material fact may be ground for the avoidance of a contract, and it is likewise the general rule that a promise made with a present intention not to perform is a misrepresentation of an existing fact which may be shown by extrinsic evidence to have induced the execution of a contract, and so as ground for avoiding it. 1 Page on Contracts, §§ 286, 298; Contract Restatement, § 473. So far as we are advised the law of Ohio is not otherwise. S. J. Clarke Publishing Co. v. Mann, 41 Ohio App. 93, 179 N.E. 814.

██ Whether the principles thus stated are here applicable requires consideration of the circumstances under which the assailed contract was negotiated and a consideration also of its terms. The plaintiff notified the defendant on April 6, 1934, that it was infringing its patent. The defendant thereupon abandoned its accused practices and removed from its plant the machinery by which they were carried on. This removal was completed April 30, 1934. Thereafter the defendant requested terms upon which it could operate under license and was asked to confer with the plaintiff at Pittsburgh. On May 22nd negotiations began. They continued until the middle or latter part of September, when the license contract was finally executed, effective as of August 1st. It is alleged and not traversed that during these negotiations the defendant failed to inform the plaintiff that it had discontinued use of the patented process. The license agreement when finally executed, contains covenants by the licensor to grant a license for improvements in the patented process, to proceed against infringers, to release the licensee from obligation in the event of a decree holding the patent invalid, to furnish an expert to instruct the licensee in the use of the process, and covenants by the licensee to keep separate account of materials fabricated under the patent, to furnish periodic statements, and to disclose to the licensor all improvements which it might develop in the patented process.

While the license was not exclusive, contained no express provision for minimum royalty, and might be terminated by the licensee upon thirty days' notice, it provided in addition to a royalty of 6% of the gross sale price of abrasive shot and 3% of the gross sale price of grit, which involve in any stage of their manufacture use of the process covered by the patent or any other invention which may come within the right of the licensee, an added royalty provision as follows: "An additional royalty of Three per cent (3%) will be paid on said material until the total of additional royalty so paid has amounted to the sum of Three Thousand Dollars ($3,-000.00)", and granted the licensee "a full and free discharge and release as to any obligations or liability arising or which might arise out of unlicensed use of the invention" at any time prior to the execution of the agreement. In view of the release from liability and the liquidation of damages for past infringement, it is clear that the agreement is more than a naked option, and that it was within the expectation of the contracting parties that the right granted to the licensee would be availed of, at least until such time, if no longer, when the additional royalty would compensate the licensor for the release of liability for past infringement.

In the light of these circumstances and the terms of the agreement we think a cause of action was sufficiently pleaded for an adjudication of the plaintiff's contention that it had been induced to conclude an agreement by fraudulent concealment of existing facts and by promises, implied if not expressed, made with no present intention of performing. In the allegations of inducement we find no, challenge to the terms of the contract impermissible under the parol evidence rule.

██ The appellee assails the replication on the ground that an allegation that the defendant "led plaintiff to believe" that the royalties which the plaintiff company

would receive would be very substantial fails to aver a promise since such belief or expectation might be inspired by other circumstances than the defendant's promise. There is necessarily no infirmity in the allegation. In relying upon a promise, though it be uncertain, the promise is "to be taken in the sense 'in which the promisor had reason to suppose it was understood by the promisee.'" United States Rubber Co. v. Silverstein, 229 N.Y. 168, 128 N.E. 123, 124. It has recently been said, "The meaning that will determine legal effect is that which is arrived at by objective standards; one is bound, not by what he subjectively intends, but by what he leads others reasonably to think that he intends." Professor Corbin, "Cardozo on the Law of Contracts," 52 Harvard Law Review, 446 (January, 1939).

Aside from a conclusion that a cause of action has been stated by the pleadings with sufficient precision to present a prima facie case of inducement by concealment and misrepresentation of existing facts, the application of modern rules of construction may disclose in the light of extrinsic attendant circumstances, obligations in the contract itself sufficient to sustain an action properly pleaded. The agreement provides, "An additional royalty of 3% will be paid, etc." This is not to be read out of its context, yet it is an unequivocal promise to pay an additional royalty until the amount so paid has reached the sum of $3,000.00. We do not overlook the absence of an express provision for minimum royalty, but as has been said by a distinguished jurist, "There are times when reciprocal engagements do not fit each other like the parts of an indented deed, and yet the whole contract * * * may be 'instinct with * * * an obligation,' imperfectly expressed." Moran v. Standard Oil Co., 211 N.Y. 187, 197, 105 N.E. 217, 221, Chief Judge Cardozo. In Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 90, 118 N.E. 214, Lady Duff-Gordon promised her agent in writing that he could have the privilege of marketing her designs. The agent made no return promise. The court held such promise to be fairly implied. "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today."

Finally are we led to decision by the familiar principle that a contract must if possible be given meaning, and so a transaction formally concluded after many months in the making is not to be lightly dismissed as a mere futility. The defendant had abandoned the alleged infringing practice before the contract was negotiated. This alone might indicate mere suspension of operation until differences could be adjusted. But it did more than merely suspend. It dismantled the machinery by which the patented process was practiced and removed it from its plant. To what end, then, were negotiations for a license initiated by the defendant? If for the sole purpose of securing a release of liability for past infringement by leading the plaintiff to expect a royalty return, then there was bad faith from the inception of the negotiations and the contract should be set aside. If with an intention to exercise its rights under the license then the contract itself does not preclude a meaning to be given to it that imposes obligation on the defendant at least to the extent that additional royalties will compensate the plaintiff for its release, measured by the terms of the contract, and there should be damages for its breach. We do not understand that such alternative remedies under the circumstances disclosed are precluded by the doctrine of election of remedies, or that the plaintiff failing judgment for rescission may not recover under the contract as written, construed in the light of circumstances attending its execution, Henderson Tire & Rubber Co. v. Gregory, 8 Cir., 16 F.2d 589, 49 A.L.R. 1503, where the cases are exhaustively reviewed. We indicate no view as to ultimate decision, but conclude that the plaintiff has the right to have its grievance adjudicated, and if reasonable amendments are required to its pleadings to permit relevant extrinsic evidence and to sustain judgment, such amendments should be allowed.

Judgment reversed and cause remanded for trial in conformity herewith.