**DUNN APPRAISAL COMPANY, et al.,**
**Plaintiffs-Appellees,**

v.

**HONEYWELL INFORMATION**
**SYSTEMS INC., et al.,**
**Defendants-Appellants.**

**No. 81-3110.**

United States Court of Appeals,
Sixth Circuit.

Argued June 24, 1982.

Decided Sept. 10, 1982.

S. Stuart Eilers, David J. Hooker, Thompson, Hine & Flory, Cleveland, Ohio, for defendants-appellants.

Edward I. Stillman, Willard E. Bartel, Miller, Stillman, Callaghan & Bartel, Cleveland, Ohio, Harry J. Lehman, Jones, Day, Reavis & Pogue, Columbus, Ohio, for plaintiffs-appellees.

Before LIVELY, Circuit Judge, WEICK, Senior Circuit Judge and ALLEN,[*] District Judge.

WEICK, Senior Circuit Judge.

This appeal involves a diversity action for fraud and breach of contract in the lease of a computer and related equipment. It is governed by Ohio law. The district court in a bench trial granted judgment for the plaintiff, Dunn Appraisal Company, which we affirm for the reasons hereinafter set forth and stated on its 34 page memorandum opinion.

## I

The facts, as found by the trial court, are as follows.

The plaintiffs-appellees are two Ohio corporations: Dunn Appraisal Company and its subsidiary, Systems Information Services, Inc. ("SIS"). Dunn Appraisal is engaged in the automobile damage appraisal business, and its president is Robert M. Dunn. SIS is a computer service bureau in Cleveland, Ohio, providing computer services to various business clients. Its president throughout most of the period in question was James C. Saneholtz.[1]

The defendants-appellants are two Delaware corporations: Honeywell, Inc. and its subsidiary, Honeywell Information Systems, Inc. ("HISI"). HISI manufactures, sells, leases, and services computer equipment. Its corporate headquarters are in Massachusetts, but it maintains a regional sales office in Cleveland, Ohio.

In early 1975, Saneholtz became friends with one of the salesmen in HISI's Cleveland office, Phillip Reimer. At that time, SIS was leasing Honeywell Model 1250 computers from a third party, but Saneholtz was interested in acquiring more modern equipment with additional capabilities, and he turned to his friend and advisor Reimer for advice. At the same time, HISI was preparing to introduce a new line of computers.

On June 9, 1975, Saneholtz met with Reimer and Clark Simpson, a Systems Manager for HISI. At this meeting there was a general discussion of the equipment needs of SIS and the relative merits of the forthcoming Honeywell Models 62/40 and 64/20

---

[*] Honorable Charles M. Allen, Chief Judge, U. S. District Court, Western District of Kentucky, sitting by designation.

[1] SIS was formerly owned by Mr. Saneholtz, at which time it was known as the J. C. Saneholtz Company. When the company was acquired by Dunn Appraisal in early 1975, Saneholtz remained as President. Following his departure in 1976, the company's name was changed to Systems Information Services, Inc. Since the events in question overlap this transition period, for the sake of simplicity both J. C. Saneholtz Company and Systems Information Services, Inc. will be referred to herein simply as "SIS."

computers. Although Saneholtz apparently did not remember this meeting, Simpson testified at the trial that Saneholtz told him and Reimer that SIS had about 400 programs which it was presently using on the 1250 computers in order to service its customers. This was important in deciding which new computer to acquire because the Model 1250 programs could be run on the 64/20 with little or no change, but they would have to be converted considerably in order to be used on the 62/40. Reimer expressed the opinion that the 62/40 was better-suited for what Saneholtz had in mind.

Following this meeting, Simpson privately expressed to Reimer serious reservations about going from a 1250 to a 62/40 because of the conversion problem. Part of Simpson's duties as Systems Manager was to analyze conversion requirements between different computer systems. He estimated that it would take 16 man-hours to convert one program, and that 400 programs would take two to four man-years to convert. He felt that such a massive conversion would not be worth the effort, and that it would be better for SIS to acquire a 64/20 even though that model would not be available as soon as the 62/40.

In any event, it appeared that both models were too expensive for SIS, so the matter was dropped.

By the fall of the year, HISI had not yet made a sale of a 62/40 in the Cleveland market and was anxious to do so. It was therefore willing to give a substantial price concession to the first Cleveland customer for the 62/40. Accordingly, the parties resumed discussions in November, this time with Dunn joining Saneholtz on behalf of SIS, and with Mike Mahoney, HISI's Cleveland Branch Manager, joining Reimer.

In these meetings, Reimer and Mahoney again described the features of the 62/40 and the 64/20, and recommended that the 62/40 was the better choice for SIS. When the question of program conversion came up, Saneholtz testified that he told Reimer and Mahoney that he didn't know the exact number of programs which SIS had, but that it was 300 to 400. Dunn and Saneholtz both testified that Reimer and Mahoney assured them that HISI would convert all of SIS's programs at no charge if they got a 62/40.

Dunn and Saneholtz had little knowledge of computers. Following the discussions with Reimer and Mahoney, Dunn had a telephone conversation with a knowledgeable person who worked for another computer concern, who advised against acquiring a 62/40. This person stressed the difficulty of converting from a 1250 to a 62/40, stating that such a transition was "not a logical step" because the 62/40 was not designed to replace the 1250. Nevertheless, Dunn and Saneholtz chose to rely upon Reimer, whom they knew and trusted. As Saneholtz later testified, Reimer was familiar with SIS's business operations and he (Saneholtz) knew that Reimer had the best interests of SIS at heart. As found by the district court, a relationship of trust and confidence existed between them.

Accordingly on December 2, 1975, Dunn, on behalf of Dunn Appraisal Company, executed a contract with HISI for the lease of a Honeywell Model 62/40 computer and associated equipment.[2] Mahoney signed on behalf of HISI. Although the contract specified that HISI would convert only 250 programs, Saneholtz testified that Reimer and Mahoney told him not to worry, that was just put there to satisfy their front office and that they would, in fact, convert all of SIS's programs.

Work on converting the programs began in January 1976, and almost from the very beginning the project was an unmitigated disaster. Although the contract called for a "projected" installation date of March 1, 1976, this was postponed until September at SIS's request because the conversion process was proceeding so slowly. At the end of March, HISI informed SIS that it would not convert all of the programs, but only 250,

**2.** Although the computer was to be used by SIS, Dunn Appraisal was the contracting party

because HISI was not satisfied with the financial condition of SIS.

and SIS was forced to hire an independent contractor to complete the job. Even by the fall of 1976, HISI had not delivered all of its 250 programs, and many of those which were delivered were not correct.

It developed that the 62/40 as installed did not have all of the capabilities it was supposed to have without the purchase of substantial additional accessories. At HISI's request, SIS hired a full-time employee, Robert Fricker, to act as liaison for the conversion effort. Nevertheless, by October 1976, the conversion was such a "botched up mess" that SIS couldn't use either the old machine or the new one to conduct its business with its customers whom it was required to serve.

Finally in December 1976, Dunn Appraisal terminated the agreement.

## II

The parties filed actions against each other in the Court of Common Pleas of Cuyahoga County, which were removed to the federal court on the grounds of diversity of citizenship. These were eventually consolidated for trial in the District Court for the Northern District of Ohio, where Dunn Appraisal and SIS filed an amended complaint and HISI filed a counterclaim against SIS. The posture of the case as it went to trial was that Dunn Appraisal and SIS alleged causes of action for breach of contract and fraud against both HISI and its parent, Honeywell, Inc., while HISI counterclaimed against SIS for prior debts relating to the 1250 computer.

The trial was conducted by the court sitting without a jury from May 29 to June 1, 1979. The evidence was sharply conflicting, especially concerning what representations had been made regarding conversion of the programs and who was to blame for the breakdown of the conversion effort. Reimer and Mahoney denied that they had promised to convert all of SIS's programs, and Reimer denied that Simpson had ever advised him against selling a 62/40 to SIS. There was testimony from HISI personnel that at least part of the conversion problems were due to disorganization at SIS.

The trial court chose to credit the testimony of the plaintiffs and their witnesses, and found in favor of plaintiff Dunn Appraisal Company against both Honeywell, Inc. and HISI on the fraud count.[3] This decision was based on a finding that Reimer and Mahoney had made the following material misrepresentations in order to induce Dunn Appraisal to enter into the contract:

1. The Honeywell 62/40 computer was best suited for the SIS operation and its projected business expansion.

2. Delivery and operational installation of the 62/40 equipment could be accomplished by not later than March 1, 1976.

3. Conversion of the 400 model 12/50 programs to the Honeywell 62/40 system could be accomplished with minor modifications and could be completed with little or no disruption to SIS customer services by the operational date of March 1, 1976.

4. Honeywell would convert all 400 programs at its expenses within the allocated time although, for business expediency any written agreement between the parties would reflect a guarantee of only 250 program conversions.

5. The Honeywell model 62/40 had an increased capability over the model 12/50, including communications capability, multi-programming capability, multi-processing capability, terminalized services and virtual memory capability.

6. The model 62/40 would improve SIS efficiency in servicing its customers with an expanded production capacity of approximately 25% to 50% over that of the 12/50 Honeywell system.

---

3. The breach of contract claim was dismissed as to Honeywell, Inc. since it was not a party to the contract. Similarly, both claims of SIS were dismissed because it was not a party to the contract and thus had not acted in reliance upon HISI's representations. These rulings were not appealed.

7. Transition of SIS employees to the operation of the 62/40 could be accomplished without additional formal training and/or labor costs.

8. Operation and maintenance costs for the 62/40 were substantially less than those for the 12/50.

9. No additional hardware or software would be needed beyond the configured 62/40 installation to meet projected SIS growth pattern.

Opinion at 4–5.

The court awarded Dunn Appraisal $61,-573.56 compensatory damages and $30,-768.78 punitive damages, plus attorney's fees of $24,628.

The court also entered judgment in favor of HISI on its counterclaim against SIS[4] in the amount of $16,986.58 on a promissory note payable with 12% interest and $21,-803.50 on a maintenance contract the total amount being $38,790.08, plus interest. That judgment is not contested.

### III

Honeywell and HISI now appeal, alleging that the judgment of the district court was erroneous in four respects:

1. The judgment against Honeywell, Inc. for fraud was predicated upon statements by another party which were neither authorized nor ratified by Honeywell, Inc.

2. The District Court's findings of fraudulent representations by HISI were clearly erroneous.

3. The district court erred in concluding that HISI had a duty to disclose to Dunn Appraisal the misgivings expressed by Clark Simpson to Phillip Reimer concerning the suitability of the 62/40.

4. The damage award was clearly erroneous.

### A

The trial court's findings with respect to Honeywell's liability are as follows:

---

4. Judgment was originally entered against Dunn Appraisal, but it was later amended to

The evidence discloses that defendants' agents in their dealings with Dunn held themselves out as representing the "Honeywell Company" and that plaintiffs were not aware that there were in fact two different Honeywell companies. Moreover, the business cards provided by various agents of the defendants to Dunn Appraisal contained the names of both companies. Accordingly, the Court finds that Dunn Appraisal was led to believe and did believe that it was doing business with Honeywell as well as HISI. Thus Dunn Appraisal may proceed against both defendants on its fraud claim.

Opinion at 1 n. 2.

In our opinion, these factual findings are sufficient to impose liability upon Honeywell Company.

### B

An appellate court can reverse a district court's findings of fact only if they are clearly erroneous. *Shimman v. Frank*, 625 F.2d 80 (6th Cir. 1980); Fed.R.Civ.P. 52. The appellants argue that the court's findings, as embodied in the nine fraudulent representations listed by the court, *supra*, are clearly erroneous.

This was a non-jury trial, and the trial judge specifically based his factual conclusions upon the credibility and demeanor of the witnesses:

In reaching this conclusion, the Court, having judged the credibility of the witnesses and the weight their testimony deserves from the behavior of the witnesses upon the witness stand, their manner of testifying, the reasonableness and probability of their testimony, the accuracy of their memory, their candor or lack of candor, their intelligence, interest and bias elects to assign greater credibility and weight to the testimony of plaintiffs' witnesses, including Simpson than to the testimony of defendants' witnesses, particularly Reimer and Mahoney.

read SIS.

Opinion at 5–6. These matters are peculiarly within the province of the trial court. *Reynolds Metals Co. v. Acorn Building Components, Inc.,* 548 F.2d 155 (6th Cir. 1977); *Davis v. Cities Service Oil Co.,* 420 F.2d 1278 (10th Cir. 1970). This is especially so when the evidence is conflicting. A trial court's findings of fact based on conflicting testimony and observation of the witnesses are entitled to great deference. *United States v. Yellow Cab Co.,* 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150 (1949); *Wedding v. Wingo,* 483 F.2d 1131 (6th Cir. 1973), *aff'd sub nom. Wingo v. Wedding,* 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974); *cf. Lydle v. United States,* 635 F.2d 763 (6th Cir. 1981) (no deference required when decision is based on documents and stipulated facts).

After reviewing the testimony in the record, we are unable to agree with appellants that the trial court's findings are not supported by substantial evidence and are clearly erroneous. If the appellees' testimony and evidence is credited, as the trial court chose to do, then there is sufficient evidence in the record to support the trial court's factual findings. There are also inferences which may be drawn therefrom. Its conclusions of law in our opinion are correct.

■ As this is a diversity case, which arose in Ohio, the substantive law of Ohio governs. In Ohio, the elements of fraud are as follows: (1) There must be an actual or implied representation of a matter of fact (2) which relates to the present or past, (3) which was material to the transactions and (4) which was false when made. (5) The statement must be made with knowledge of its falsity, or with reckless disregard for whether it is true or not and (6) with the intent to mislead the other party into relying upon it. (7) The other party must be ignorant of the fact averred, causing (8) justifiable reliance and (9) injury. *Block v. Block,* 165 Ohio St. 365, 135 N.E. 857 (1956).

■ It is neither necessary nor appropriate to dissect all of the evidence as to each of the trial court's factual findings and

measure it against the above standards, as appellants are not entitled to a trial de novo. Any one of the findings, if it meets the above test, would be sufficient for a finding of fraudulent inducement. It will therefore suffice to just briefly discuss the major ones.

The first finding made by the district court was that the Honeywell 62/40 was "best suited for the SIS operation and its projected business expansion." HISI argues that no such statement was made, that it is an opinion about the future rather than a statement concerning a past or present fact, and that if the statement was made, there was no proof that it was false.

It is true that there was no testimony that such a verbatim statement was made by Reimer or Mahoney. However, the trial court was not repeating a verbatim quotation, but was summarizing the fair import of the various statements made by HISI's agents. A false representation may be implied as well as actual. *Block v. Block, supra.* The evidence supports the trial court's finding that HISI made an implied representation that the 62/40 would be the best computer for SIS's needs.

We also agree with the district court that the implied representation that the 62/40 would be suitable for the intended use at SIS was a statement regarding a present fact rather than an opinion about the future, because it was a statement regarding the inherent, existing capabilities of the product. General representations that data processing equipment will be suitable for a customer's operations, based upon familiarity with both the equipment's capabilities and the customer's needs, are statements concerning present facts. *Clements Auto Co. v. Service Bureau Corp.,* 298 F.Supp. 115 (D.Minn.1969), *aff'd in part and remanded on other grounds,* 444 F.2d 169 (8th Cir. 1971).

There is also evidence in the record from which the trial court could have concluded that the representation was false when made, because two other knowledgeable individuals recommended against using the

62/40. The fact that Reimer did not disclose Clark Simpson's doubts about the 62/40 to Dunn and Saneholtz, or at least modify his own recommendations in light thereof, supports the trial court's inference of willful disregard for the truth. Under Ohio law, it is not necessary that the defendant have actual knowledge that a statement is false. It is sufficient if the statement is made with utter and reckless disregard for whether it is true or not. *Block v. Block, supra; Beamer v. Feick*, 113 Ohio App. 264, 177 N.E.2d 691 (1960).

■ Another major representation was the promise to convert all of SIS's programs. Although Reimer and Mahoney denied that they made such promises, the trial court credited the testimony of Dunn and Saneholtz that they did. Such a conflict in the evidence was for the trial court to resolve. *United States v. Yellow Cab Co., supra.* Although the general rule is that fraud cannot be predicated upon a representation concerning a future event, *Tibbs v. National Homes Construction Corp.*, 52 Ohio App.2d 281, 369 N.E.2d 1218 (1977), a statement concerning what the speaker intends to do in the future stands upon a different footing. A promise made with a present intention not to perform it is a misrepresentation of an existing fact, i.e., the speaker's present state of mind, and if such a false representation induces the other party to enter into a contract, the contract may be avoided. *Monaghan v. Rietzke*, 85 Ohio App. 497, 89 N.E.2d 159 (1950); *Globe Steel Abrasive Co. v. National Metal Abrasive Co.*, 101 F.2d 489 (6th Cir. 1939). The district court's finding that Reimer and Mahoney falsely promised to convert all of SIS's programs, and that this promise was one of the factors which induced Dunn Appraisal to enter into the contract, was not clearly erroneous.

### C

The appellants also take issue with the amount of damages which the district court awarded to Dunn Appraisal. Those damages were as follows:

(1) Cost of management time and expense devoted to the installation of the 62/40 and the conversion of computer programs.

The Court finds that the amount of $20,000.00 is reasonable monetary value for the time Robert Dunn devoted to the conversion effort.

Kenneth Bucher testified that Robert Fricker was employed by Dunn Appraisal upon the advice of Mahoney who desired a direct liaison between Honeywell and plaintiffs. The evidence indicates that Fricker acted solely in this capacity at an incurred expense of $8,389.10.

The evidence fails to support Dunn Appraisal's entitlement to damages for the services of other Dunn Appraisal personnel in the conversion process.

(2) Labor and 400 hours of machine time to prepare test data for the system at $45.00 per hour for a total of $18,000.00.

(3) Dunn Appraisal incurred the following expenses directly connected with the installation of the 62/40: $1,242.00 for the wiring of the new computer and temporary transformer (Cook Electric); $300.00 for the rental of a transformer (Hannon Electric).

4. Lease and purchase costs of disks and tapes for the 62/40 for an aggregate of $745.93.

(5) Dunn Appraisal's cancelled checks establish payment of $11,175.00 to Compu-Logics, an independent contractor that completed the conversion of computer programs for the 62/40.

Computer Management, Inc. charged Dunn Appraisal $1,721.53 for tape conversions needed by Dunn Appraisal in order to service the United Shippers account.

No other items of damages have been established with the requisite certainty. Accordingly, plaintiff's actual damages total $61,573.56.

Opinion at 11–12.

■ Robert Dunn testified that he was paid a salary of $100,000 per year at the time of this contract, and that he devoted approximately one-fifth of his time during calendar year 1976 to the computer prob-

lem. Accordingly, the district court awarded $20,000 to Dunn Appraisal for the value of the time which Robert Dunn devoted to the conversion effort. The appellants argue that executive "lost time" is not compensable, citing *Wilson v. Marquette Electronics, Inc.*, 630 F.2d 575 (8th Cir. 1980), and *Chatlos Systems, Inc. v. National Cash Register Corp.*, 479 F.Supp. 738 (D.N.J. 1979), *aff'd in part and remanded on other grounds*, 635 F.2d 1081 (3d Cir. 1980).

*Wilson* is distinguishable. Plaintiff Wilson was a physician who had an individual practice. He was also a director of the corporate plaintiff, ECG Systems, Inc. The Eighth Circuit reversed an award of damages to ECG Systems for the value of the time which Wilson had had to devote to problems caused by defendant's equipment, since he took the time away from his own practice and ECG suffered no loss because of it. The situation here is quite opposite: Dunn Appraisal was paying Robert Dunn, and the time he spent was Dunn Appraisal's time, not his own.

The *Chatlos* court awarded the plaintiff corporation damages for executive lost time with the exception of the president's time, reasoning that a chief executive officer assumes the risk of all corporate problems. We find that reasoning unpersuasive. A chief executive officer is a salaried employee like any other, and a distinction between him or her and other, lower level executives is unjustified. In either case, the corporation is paying for their time. In the absence of any Ohio cases on point, we prefer to follow the reasoning of *Convoy Co. v. Sperry Rand Corp.*, 672 F.2d 781 (9th Cir. 1982). As that court aptly put it, the issue is "not whether Convoy would have paid the supervisors' salaries if the defendant had not breached the contract, but whether the breach deprived Convoy of the services it paid for." 672 F.2d at 785. *See also* *Clements Auto Co. v. Service Bureau Corp.*, 444 F.2d at 191 n. 18 (allowing as damages a portion of the salaries paid to plaintiff's executives due to time spent on problems caused by defendant's equipment.)

We therefore hold that the $20,000 award for time spent by Robert Dunn was proper.

■ The trial court awarded Dunn Appraisal $8,389.10 for the costs incurred in employing Robert Fricker as a full-time employee to work on the conversion project. The record shows that Dunn Appraisal paid Fricker $6,146.10 in wages, and appellants do not contest that amount. Rather, they object to the balance of the amount awarded—$2,243.00—which represents fees paid to employment agencies by SIS for locating Fricker.

This case is rather unusual in that Dunn Appraisal was the contracting party, but most of the damages were incurred by its subsidiary, SIS, which was not a party to the contract. The appellants are correct that the trial court's opinion is erroneous in indicating that all of the various items of expense listed above were incurred by Dunn Appraisal. The record shows that all of the expenses, with the exception of Dunn's and Fricker's salaries, were paid by SIS, not Dunn Appraisal. Nevertheless, the trial court awarded all of the damages to Dunn Appraisal, the parent of SIS. The appellants do not challenge the accuracy of the amounts, but contend that it was error to award damages to Dunn Appraisal for expenses which were actually incurred by its subsidiary SIS.

The items of damage allowed would unquestionably be proper as consequential damages if they had been suffered by Dunn Appraisal, and they are fully supported by the record. The fortuitous circumstance that they were paid from SIS's bank account rather than Dunn Appraisal's should not permit the wrongdoer to escape without paying the entire amount of the damages, which it does not contest were actually incurred. It ought not to be a matter of concern where Dunn Appraisal obtained the money to pay the damages it sustained, nor the relationship between the parent corporation and its subsidiary.

Although Dunn Appraisal was the contracting party, this was only because HISI was not satisfied with the financial condition of SIS. All of the parties knew that the computer was to be used by SIS, not

Dunn Appraisal. SIS was thus a third party beneficiary of the contract between Dunn Appraisal and the defendants. A party in whose name a contract has been made for the benefit of another may bring an action in his own name. Fed.R.Civ.P. 17(a); 6 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1549 (1971). A third party beneficiary may act in justifiable reliance upon a fraudulently induced contract as much as the promisee.

Accordingly, the judgment may be modified to show that Dunn Appraisal holds $35,427.46 of the compensatory damages awarded—the amount of the expenses incurred by SIS—as trustee for SIS. *Jordan & Phillips v. Dixie Culvert & Metal Co.*, 146 Ga. 284, 91 S.E. 68 (1916); 4 A. Corbin, *Contracts* § 812 (1951); *see Restatement (Second) of Contracts*, § 307, Comment b (1981). This is sufficient protection for the defendants-appellants.

The appellants do not challenge the amounts of the punitive damages and attorneys' fees awarded by the trial court, except to say that they should be reduced in proportion to any reduction which this court makes in the compensatory damages. Since we affirm the award of compensatory damages with the above modification, the award of punitive damages and attorneys' fees is likewise affirmed.

The judgment is affirmed.