Glenn T. SANDERS, on behalf of himself and all others similarly situated, Plaintiffs,

v.

ROBINSON HUMPHREY/AMERICAN EXPRESS, INC., et al., Defendants.

Tommy E. PARKER, as custodian for Kimberly M. PARKER, and James L. Smith, on behalf of themselves and others similarly situated, Plaintiffs,

v.

PAINE WEBBER GROUP, INC., Defendant.

Suzanne KIRKPATRICK, Dorothy D. Casler and Charles H. Lindsey, Plaintiffs,

v.

J.C. BRADFORD & CO., Defendant.

Civ. A. Nos. C 85–172 A, C 85–1586 A and C 85–1891 A.

United States District Court, N.D. Georgia, Atlanta Division.

March 28, 1986.

---

Kenneth A. Jacobsen, Nicholas E. Chimicles of Greenfield & Chimicles, Philadelphia, Pa., J. Alexander Porter, Glenn A. Delk, Gail Tusan Joyner of Asbill, Porter, Churchill & Nellis, Atlanta, Ga., for plaintiffs in Civ. A. No. C 85–172 A.

Harvey D. Myerson, Lloyd S. Clareman of Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, New York City, Peter J. Anderson, R. Hal Meeks, Jr., David C. Jensen of Peterson, Young, Self & Asselin, John C. Gray of Gray, Gilliland, & Gold, Atlanta, Ga., for defendants in Civ. A. No. C 85–172 A.

Nicholas E. Chimicles of Greenfield & Chimicles, Philadelphia, Pa., D. Lake Rumsey, Jr. of Driebe & Rumsey, Atlanta, Ga., for plaintiffs in Civ. A. No. C 85–1586 A.

Richard M. Kirby of Hansell & Post, Atlanta, Ga., Robert E. Zimet, Jeremy A. Berman, Marco Schnabl and Charles F. Walker of Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant in Civ. A. No. C 85–1586 A.

J. Alexander Porter, Glenn A. Delk, Gail Tusan Joyner, of Asbill, Porter, Churchill & Nellis, Atlanta, Ga., Nicholas E. Chimicles and Kenneth A. Jacobsen of Greenfield & Chimicles, Philadelphia, Pa., for plaintiffs in Civ. A. No. C 85–1891 A.

John C. Gray of Gray, Gilliland & Gold, P.C., Atlanta, Ga., Ames Davis, of Waller, Landsden, Dortch, & Davis, Nashville, Tenn., for defendant in Civ. A. No. C 85–1891 A.

## ORDER

VINING, District Judge.

■ In these federal securities actions, the plaintiffs have filed motions for class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The court already has considered and ruled on the defendants' motions to dismiss and numerous discovery and procedural motions. These cases are now ripe for a determination of whether they may proceed as class actions.[1] An understanding of the history of the Petro-Lewis cases is necessary before the court considers the motions for class certification.

## I. HISTORY OF THE PETRO–LEWIS LITIGATION

From 1970 to 1983, Petro-Lewis was the nation's largest seller of oil and gas income funds. These programs raised money from investors, who became limited partners, and used the proceeds to purchase oil and gas producing properties. Cash distributions to the limited partners, which were paid quarterly, began almost immediately after each partnership was formed and were to continue for 10 to 15 years or more until the wells were depleted. Petro-Lewis, an independent oil and gas producer and manager of petroleum investments for public and private partners, acquired oil and gas properties for public limited partnerships, shared ownership of those properties, and managed the limited partnerships as a general partner. Over a 14-year period, Petro-Lewis sold, through securities brokerage firms, in excess of $3 billion worth of partnerships to approximately 180,000 people.

As oil and gas prices began to decline in 1981 and 1982, Petro-Lewis was forced to borrow funds to pay partnership distributions, service the debt it was incurring, and promote the sale of additional programs. In February 1984 Petro-Lewis revealed that it would sustain a substantial loss, that it was cutting distributions to limited partners by as much as 50 percent, that the company would have to sell between one quarter and one third of its total reserves to reduce bank debt, and that Petro-Lewis was immediately terminating all sales of partnership programs. Numerous lawsuits against Petro-Lewis followed.

In In re Petro-Lewis Securities Litigation [1984–85 Transfer Binder], Fed.Sec.L.Rep. ¶ 91,899 (D.Colo.1984), the court set forth the history of the Petro-Lewis litigation

---

1. On October 28, 1985, this court held that a companion case, *Chandler v. Drexel Burnham Lambert, Inc.*, C85–1585A (N.D.Ga.1985), should be sent to arbitration. The plaintiff has appealed that decision to the Eleventh Circuit Court of Appeals.

that lead to these class actions.[2] In that case, the court consolidated eleven class actions filed between February 9, 1984, and May 9, 1984. The defendants were the Petro-Lewis Corporation, the Petro-Lewis Funds, Petro-Lewis Securities Corporation, and the seven directors of Petro-Lewis Corporation. The amended consolidated class action complaint set forth claims under the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78a, *et seq.*, and the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a, *et seq.* The plaintiffs in the original Colorado action sought to represent two classes: (1) a "securities class," consisting of the purchasers of securities, including common stock, warrants, and preferred stock, and (2) a "partnership class," consisting of persons who purchased, reinvested in, or otherwise acquired limited partnership interests in over 100 partnerships formed by Petro-Lewis to purchase oil and natural gas producing properties between August 1975, and February 1984, and in the Petro-Lewis deferred income program formed in 1981. The Petro-Lewis complaint alleged that during the relevant times the defendants made, or caused to be made, statements in Petro-Lewis prospectuses, periodic shareholder and investor reports, filings with the Securities and Exchange Commission, press releases, investor letters, and other documents, that were materially false and misleading and that the defendants omitted to disclose certain material facts and adverse information about Petro-Lewis and the partnerships that it managed. Some plaintiffs sought relief in the form of rescission of their purchases of limited partnership interests. All plaintiffs sought damages, interest, costs, and disbursements.

On July 3, 1984, co-lead counsel for the plaintiffs and counsel for the defendants in the Colorado litigation executed an agreement in principle to settle all eleven class actions. The settlement agreement consisted of two primary components: (1) formation of a royalty trust, and (2) creation by the defendants of a settlement fund consisting of cash and non-cash considerations valued at $23.5 million. Notices were sent to approximately 180,000 holders of limited partnership interests in 45 limited partnerships, plus approximately 7,000 members of the stockholder class. In addition, 40,000 notices were sent to brokers for forwarding to persons on whose behalf interests were held. According to a public announcement made December 26, 1984, all 45 affected limited partnerships voted, by very substantial margins, in favor of the settlement. The settlement required Petro-Lewis, on behalf of all defendants, to contribute consideration of $23.5 million to a settlement fund, which included $10 million in cash plus approximately 720,000 trust units valued at $13.5 million.

The class members who participated in the settlement were to sign a release form which provided that all the defendants, and any subsidiary or affiliate of Petro-Lewis, would be released with respect to all claims, demands, and causes of action. The release form, however, was not intended to release any broker-dealer in its capacity as an agent for Petro-Lewis or any of its affiliates in connection with the issuance, purchase, or sale of any of the securities of, or interest in, Petro-Lewis, or any of the limited partnerships of which Petro-Lewis or any subsidiary or affiliate of Petro-Lewis was a general partner. Counsel for all parties agreed that the purpose and intent of the release was solely to protect the defendants in the Colorado action and that it was intended that all the plaintiff class members retain any rights that they might have to proceed against and collect from broker-dealers or other nondefendants who might be liable to them.

The court conditionally certified the partnership class and the securities class for purposes of settlement only. The court indicated that there were serious questions of law and fact which placed the outcome

---

**2.** The facts set forth in part I are taken from Judge Carrigan's opinion in the Colorado litigation.

of the class actions, if tried rather than settled, in substantial doubt. One such question was:

> In view of the substantial number of distinct partnerships and the variations in facts relevant to, and potential conflicts among, the claims of those partnerships, there is doubt whether this action could be certified under Fed.R.Civ.P. 23 (except conditionally, for settlement purposes) and, if certified, whether the partnership class would have to be splintered into numerous subclasses.

¶ 91,889 at 90,470.

After carefully examining the proof of claim and release forms and the notices to be sent out, the court approved the proposed settlement as fair, reasonable, and adequate for all members of the plaintiff classes.

## II. THE INSTANT LITIGATION

The plaintiffs seek to represent individuals who purchased, reinvested in, or acquired from the defendants limited partnership interests in Petro-Lewis income programs from January 1, 1981, to February 6, 1984. The amended complaints in these three proposed class actions are divided into three parts. The plaintiffs spend 30 pages setting forth the alleged wrongdoings by Petro-Lewis. For example, the amended complaint alleges that statements made in the Petro-Lewis prospectuses from 1981 to 1984 were false and misleading because they did not disclose the risks inherent in purchasing Petro-Lewis partnership interests. Amended Complaint ¶ 22.[3] Petro-Lewis also allegedly failed to disclose excessive leveraging of all partnerships, made unsecured loans to partnerships to inflate distributions to limited partners and to attract new sales, made false and misleading financial statements, annual and periodic reports, press releases and newsletters, and failed to disclose that substantial tax benefits expected to be received by limited partnership investors were likely to be disallowed. *Id.* at ¶¶ 22–23. Petro-Lew-

is also allegedly failed to inform the investing public of the risks involved in the Petro-Lewis method of operation, including competition in the industry by less risky investment programs and the severe difficulty of obtaining debt servicing. *Id.* at ¶ 23.

A *Wall Street Journal* article on April 5, 1983, reported that Petro-Lewis was "facing an apparent cash squeeze that might lead to nasty surprises for holders." The article stated that Petro-Lewis had " 'leveraged' or invested in a larger value of oil properties than the original cash put up." *Id.* at ¶ 24. Petro-Lewis issued a press release denying substantially all of the statements made in the *Wall Street Journal* article and allegedly maintained artificially high distribution to the partnerships to attract new partnership sales. *Id.* Finally, on February 6, 1984, Petro-Lewis allegedly revealed the following: that it had severe losses, that it was cutting its distribution by 50 percent, that it was reducing the price at which Petro-Lewis agreed to repurchase partnership interests, that it was drastically reducing its work force, and that it was immediately terminating all sales of partnership programs. *Id.* at ¶¶ 35–36. At the time Petro-Lewis made these revelations, reserves bought by many partnerships were worth only ⅓ to ½ what the partnerships paid for them. *Id.* at ¶ 36.

In the second part of the complaints, the plaintiffs set forth the defendants' alleged roles in the sales scheme. According to the complaints, Petro-Lewis partnership interests were marketed by selected members of the National Association of Securities Dealers, including the defendants in this action, pursuant to selling agreements with Petro-Lewis securities corporation, a wholly owned subsidiary of Petro-Lewis. Each brokerage house allegedly received sales commissions of up to seven percent on each partnership interest sold, plus a special

---

**3.** References to paragraphs in this part of the order refer to the *Sanders v. Robinson-Humphrey* amended complaint, although the other two amended complaints are substantially similar.

sales incentive payment of 1½ percent when the brokerage house's sales in a program exceeded $400,000. *Id.* at ¶ 38. Sales of the Petro-Lewis partnership interests allegedly were a significant source of revenue and profit to the defendants. *Id.* at ¶ 40. The plaintiffs contend that the defendants trained and instructed their account representatives in standard techniques to promote, solicit, sell, and induce customers to purchase Petro-Lewis partnership interests. During the class period, the defendants allegedly provided to the plaintiffs and the proposed classes the prospectuses, financial statements, annual and periodic reports, press releases, and other statements described in part I of the complaints. In addition, the plaintiffs assert that the defendants made numerous uniform statements of fact and verbal assurances to the plaintiffs and the members of the proposed classes to the effect that Petro-Lewis' public statements were worthy of the plaintiffs' trust and belief, that Petro-Lewis was operating soundly, and that Petro-Lewis partnerships were good investments from which high long-term yields could be expected at minimal risk. *Id.* at ¶ 41.

The defendants allegedly knew or recklessly disregarded information available to them which disclosed or would have disclosed the financial problems of Petro-Lewis and its partnerships as described in part I of the complaints. *Id.* at ¶ 43. Even though the defendants allegedly knew or should have known these facts, they continued to market and sell Petro-Lewis partnership interests to the plaintiffs and members of the proposed classes during the class period without disclosing any of the facts asserted in part I of the complaints. The plaintiffs assert that the defendants characterized the Petro-Lewis partnership interests as relatively low risk investments when they were clearly known to be high

risk investments and that the defendants uniformly dissuaded and discouraged customers, including the plaintiffs and the members of the proposed classes, from selling or liquidating their interests in the Petro-Lewis partnership programs. *Id.* at ¶ 44. The plaintiffs allege that the defendants knew or recklessly disregarded facts contributing to Petro-Lewis' financial problems, the vulnerability of Petro-Lewis' partnership programs caused by the pattern of excessive leveraging instituted by Petro-Lewis management, and the high degree of risk involved in any investment in the Petro-Lewis partnership programs. *Id.* at ¶ 45. The plaintiffs and their proposed classes allege that as a result of the foregoing, they were damaged. *Id.* at ¶ 46.

Part III of the amended complaints sets forth the seven counts that form the basis of this lawsuit. Count I, brought pursuant to section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, alleges that the defendants issued, caused to be issued, participated in the issuance of, or aided and abetted the issuance of materially false and misleading statements to the investing public that appeared in publicly disseminated materials relating to Petro-Lewis and its partnership programs during the class period, including the registration statements and the prospectuses that misrepresented and failed to disclose the facts set forth in part I of the complaints. *Id.* at ¶ 53. Count II, brought pursuant to section 12(2) of the Securities Act, 15 U.S.C. § 77*l*(2), alleges that the defendants made untrue statements of material fact or omitted to state material facts in the prospectuses, newsletters, releases, and instruction booklets. The defendants also allegedly used the means and instruments of transportation or communication in interstate commerce or the mails to perform these violations of section 12(2). *Id.* at ¶ 58.[4] Count

---

4. In all three class action cases, the defendants filed motions to dismiss, contending that section 13 of the Securities Act, 15 U.S.C. § 77m, the statute of limitations for sections 11 and 12(2), barred these counts. In *Sanders v. Robinson-Humphrey,* the court dismissed the plaintiffs' claims for their 1981 purchases. *See* Order filed

Sept. 11, 1985. In *Kirkpatrick v. J.C. Bradford,* the court dismissed Counts I and II since the claims were barred by the statute of limitations. The court allowed the plaintiffs' attorneys to communicate with potential class members in an attempt to find plaintiffs not barred by the statute of limitations. *See* Order filed Sept. 11,

III, brought pursuant to section 15 of the Securities Act, 15 U.S.C. § 77o, the "controlling person" liability provision for sections 11 and 12, alleges that the named defendants directly or indirectly controlled the activities of the brokerage houses as underwriters of the Petro-Lewis partnership interests and programs and were responsible for the content of the Petro-Lewis registration statement and prospectuses during the class period, or directly or indirectly induced the acts alleged in Counts I and II. *Id.* at ¶ 64.[5] Count IV alleges a cause of action under sections 10 and 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and § 78t, and Rule 10b–5, 17 C.F.R. § 240.10b–5.[6]

In addition to the federal securities claims, the plaintiffs allege common law fraud and deceit (Count V), negligence and negligent misrepresentation (Count VI), and fraudulent concealment and breach of fiduciary duty (Count VII). The amended complaint in *Parker v. Paine Webber* also alleges a cause of action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c).

Each of the complaints demand judgment against the defendants for compensatory damages, the costs and disbursements of the action, including reasonable attorneys' fees, and punitive and exemplary damages in the amount of $10 million. In addition, the plaintiffs requested that this court determine that these complaints may proceed as class actions under Rule 23 of the Federal Rules of Civil Procedure.

The parties have engaged in extensive preliminary discovery on the class certification question. The court held an evidentiary hearing on February 27, 1986, and the parties submitted briefs before and after the hearing.

## III. FRAMEWORK OF ANALYSIS

A party that seeks to invoke Rule 23 has the burden of proving that all of the prerequisites to utilizing the class action procedure have been satisfied. *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981).[7] The burden of satisfying the requirements of Rule 23 falls on the party who seeks to maintain a class action. *Amswiss International Corp. v. Heublein, Inc.,* 69 F.R.D. 663, 665 (N.D.Ga.1975). Questions concerning class certification are left to the sound discretion of the trial court. *Freeman v. Motor Convoy, Inc.,* 700 F.2d 1339, 1347 (11th Cir.1983).

■ The question of class certification is a procedural one, distinct from the merits of the action. *Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). The court may not inquire into the merits of this case because the Supreme Court has held that "nothing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle*

1985. In *Parker v. Paine Webber,* the court dismissed Counts I and II. *See* Order filed Sept. 11, 1985. The plaintiffs amended their complaint, and the court denied the defendant's motion to dismiss Counts I and II of the amended complaint. *See* Order filed Feb. 14, 1986.

5. A claim against a controlling person is governed by the same limitations period that applies to the Securities Act claim against the controlled person. This court held that section 13, therefore, also applied to the plaintiffs' section 15 claim. *See Herm v. Stafford,* 663 F.2d 669, 679 (6th Cir.1981). As a result, Count III in *Kirkpatrick* was dismissed. *See* Order filed Sept. 11, 1985. The amended complaint in *Parker v. Paine Webber* did not allege a cause of action under section 15.

6. The cause of action under section 20 was dismissed in *Kirkpatrick v. J.C. Bradford* and not alleged in the amended complaint in Parker v. Paine Webber.

The defendants, in their motions to dismiss this count, alleged that the plaintiffs failed to plead fraud with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. The court declined to dismiss on this ground. *See* Orders filed Sept. 11, 1985.

7. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted the law of the Fifth Circuit prior to October 1, 1981, as binding precedent.

*& Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). "[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* at 178, 94 S.Ct. at 2153.[8]

The court must make seven affirmative findings before this case may be certified as a class action. First, the plaintiffs must establish two prerequisites not expressly stated in Rule 23 that have been developed by the courts. Then, the plaintiffs must demonstrate that they have met the requirements of Rule 23(a). Finally, the plaintiffs must prove that these cases fall within one of the three categories of class actions in Rule 23(b).

Although not specifically mentioned in Rule 23, the first essential prerequisite of a class action is that there must be a class. 7 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1760 at 579 (1972). The class action complaints allege that these actions were brought on behalf of individuals who purchased, reinvested in, or acquired limited partnership interests in Petro-Lewis income programs from January 1, 1981, to February 6, 1984. These individuals form the class. Once a court determines that a class exists, it then must ascertain whether the named representatives are members of the class they purport to represent. *Id.* at § 1761, at 584; *see East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1976) (holding that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members"). Because the plaintiffs clearly purchased

their limited partnership interests within the class period, they are clearly members of the class.

Having satisfied the two implied prerequisites for a class action, the plaintiffs have the burden of making a positive showing that they fulfill all the requirements of Rule 23(a) and that the action falls within one of the categories of Rule 23(b). *See Amswiss International Corp. v. Heublein, Inc.,* 69 F.R.D. 663, 665–66 (N.D.Ga.1975). The court now turns to Rule 23.

### IV. RULE 23(a)

A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Rule 23(a) provides:

> *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The court addresses each of these subdivisions in turn.

#### A. *Rule 23(a)(1): Numerosity*

■ Numerosity is not in dispute in this case. Joinder of all class members clearly would be impracticable. A plaintiff need not specify an exact number of class members, but must show only that joinder is

---

**8.** After citing *Eisen,* however, Professor Arthur Miller points out that "there is no way the judge can make the ... findings required by Rule 23 without at least a preliminary exploration of the merits. This will not be to ascertain who is going to win and who is going to lose, but simply to develop some feel for the contours of the case." A. Miller, *An Overview of Federal Class Actions: Past, Present and Future,* 15 (Federal Judicial Center 2 ed. 1977). The Eleventh Circuit agrees with Miller:

> While it is true that a trial court may not properly reach the merits of a claim when determining whether class certification is warranted, *Miller v. Mackey International, Inc.,* 452 F.2d 424, 428 (5th Cir.1971), this principle should not be talismanically invoked to artifically limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements. *Love v. Turlington,* 733 F.2d 1562, 1564 (11th Cir.1984).

impracticable through "some evidence or reasonable estimate of the number of purported class members." *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir.1981). The plaintiffs in *Kirkpatrick* and *Sanders* have offered evidence showing that there are approximately 8,000 individuals who are potential class members. None of the defendants contends that the plaintiffs have not met the numerosity requirement.

### B. *Rule 23(a)(2): Commonality*

■ To satisfy Rule 23(a)(2) the plaintiff must establish the existence of questions of law *or* fact common to the class. This provision does not require that all class members share the exact same legal claims. *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir. 1978). The commonality requirement is satisfied where the questions of law or fact linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated. *See Kleiner v. First National Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D.Ga.1983). The court notes that because Rule 23(a)(2) requires "questions of law or fact," more than one issue of law or fact must be common to the members of the class.

The plaintiffs list numerous questions of law or fact that clearly satisfy this requirement: (1) whether the prospectuses and other sales literature distributed by the defendants to the plaintiffs and the class contain material misrepresentations of fact or omit material facts concerning the safety and investment worth of the Petro-Lewis partnerships; (2) whether, during the class period, the defendants concealed material information about the precarious financial condition of Petro-Lewis and its partnerships; (3) whether the defendants concealed the truth about the historical performance of the Petro-Lewis partnerships; (4) whether the defendants misrepresented the future business prospects of Petro-Lewis and its partnerships programs; and (5) whether the defendants violated the federal securities laws and the common law in connection with their sales of limited partnership interests in the Petro-Lewis programs during the class period.

In most cases, neither the parties nor the courts spend much time discussing the commonality requirement. In general, courts that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of contexts. 7 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1763 at 604 (1972).[9]

### C. *Rule 23(a)(3): Typicality*

■ Rule 23(a)(3) insists that the class representatives have typical claims or defenses.[10] A representative's claim is typical of the class if it arises from the same event, practice, or course of conduct that gives rise to the claims of the absent class members and if the individual claims are based on the same legal or remedial theory. *Davis v. Northside Realty Associates, Inc.*, 95 F.R.D. 39, 43 (N.D.Ga.1982); *see Gonzales v. Cassidy*, 474 F.2d 67, 71 n. 7 (5th Cir.1973) (holding that representative was "typical of the class within the meaning of Rule 23(a)(3) because he did not have interests which conflicted with those of the class, . . ."). The Supreme Court has held that typicality is met when a "class representative [is] part of the class and 'pos-

---

**9.** It is important to distinguish between Rule 23(a)(2) and Rule 23(b)(3). Rule 23(b)(3) provides that common questions must *predominate* to have a class action under Rule 23(b)(3). This requirement is discussed more fully in part V.

**10.** Professor Arthur Miller is skeptical about the usefulness of this requirement:

But in the case of subdivision (a)(3), there does not seem to be *any* function it performs that is not accomplished by some other portion of the Rule. . . . But if the plaintiffs are class members (an implied requirement), and there are common questions (Rule 23(a)(2) ), and the class is adequately represented (Rule 23(a)(4) ), it is very, very difficult to identify anything that is added by "typicality." The other prerequisites will ensure "typicality" among the class members' claims or defenses. A. Miller, *An Overview of Federal Class Actions: Past, Present and Future*, 26 (Federal Judicial Center 2 ed. 1977) (emphasis in original).

sess[es] the same interests and suffer[s] the same injury' as the class members." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1976).

The degree of investment experience or sophistication of the class representatives is irrelevant. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir.1983). The complaints allege that the defendant committed the same unlawful acts by the same method against an entire class. All members of the class, therefore, may have similar claims. Thus, the plaintiffs have met the typicality requirement. *See id.* Even though class members purchased different Petro-Lewis limited partnership interests, the plaintiffs allege that the defendants engaged in a uniformly fraudulent course of conduct, disseminated virtually identical false prospectuses, financial statements, and other financial information, and failed to disclose material information regarding the operations of Petro-Lewis to purchasers during the class period. When plaintiffs have alleged such a common course of conduct, courts consistently have found no bar to class certification even though members of a class may have purchased different types of securities or interests, or purchased similar securities at different times.

When weighing the prerequisites of Rule 23, the Eleventh Circuit has held that "subsection (a)(3) primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large. Moreover, "the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985) (citations omitted). The court clearly finds that the plaintiffs' claims are typical of the classes they seek to represent. "[T]he typicality requirement is not so rigid as to comprehend only similar fact situations ... it would be a better test of typicality to consider whether the types of facts or evidence were typical of the class." *Walker*

*v. Jim Dandy Co.*, 638 F.2d 1330, 1336 (5th Cir.1981).

### D. *Rule 23(a)(4): Adequacy of Representation*

Rule 23(a)(4) is the most important prerequisite in Rule 23(a). *See* A. Miller, *An Overview of Federal Class Actions: Past, Present and Future*, 27 (Federal Judicial Center 2 ed. 1977). This provision requires a showing that the class representative will fairly and adequately protect the interests of the class. By far it is the most heavily litigated of the prerequisites. *Id.* at 28. Professor Miller states:

> The class or representative action represents an exception to the principle of an individual right to a day in court. The justification for permitting it is that considerations of efficiency and economy and good practice permit issuing an order or rendering a judgment that binds everyone in a defined group who was properly represented before the court and therefore has had a day in court vicariously. It is Rule 23(a)(4) that ensures the quality of that representation and the integrity of the system. Unless there has been fair and adequate representation, due process has not been satisfied and any attempt at binding the absentee is improper. *Id.*

*See Hansberry v. Lee*, 311 U.S. 32, 44–46, 61 S.Ct. 115, 119–20, 85 L.Ed. 22 (1940) (discussing due process under Rule 23(a)(4)).

Courts traditionally hold that to satisfy Rule 23(a)(4) the plaintiff must meet two tests. First, the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation. *Gonzales v. Cassidy*, 474 F.2d 67, 73 n. 10 (5th Cir.1973); *Schatzman v. Talley*, 91 F.R.D. 270, 273 (N.D.Ga.1981). Based on the plaintiffs' attorneys' performance in these cases thus far, as seen through the discovery, briefs, and motions, and the hearing before the court, the court has no reason to question the competency of the plaintiffs' attorneys. They have demonstrated a clear understanding of the issues in these cases and the competence and abil-

ity to conduct sophisticated securities litigation.

The second requirement under Rule 23(a)(4) is that the plaintiffs must not have interests antagonistic to those of the class. *Gonzales*, 474 F.2d at 73 n. 10; *Schatzman*, 91 F.R.D. at 373. Courts interpreting this prerequisite have held that "the primary criterion is the forthrightness and the vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *See Schatzman*, 91 F.R.D. at 273. The named plaintiffs have failed to impress the court that they will vigorously prosecute these class actions. The representatives are not sufficiently interested in the outcome of these actions to protect adequately the rights of the potential class members. The plaintiffs' failure in this respect is fatal to their motions for class certification.

The court notes that while each of the reasons given below is not determinative, the "totality of the circumstances" indicates that the plaintiffs have failed to satisfy Rule 23(a)(4).

First, in the hearing the court stated: It concerns me deeply today that as far as I know none of the named plaintiffs showed up for this hearing and in fact when a subpoena was issued for them they resisted. I did not require them to appear simply because I thought if they were interested in the litigation they ought not to have to be subpoenaed to appear. Transcript of hearing, Feb. 27, 1986, at 114-15.

The plaintiffs contend that the defendants subpoenaed the plaintiffs merely to harass them. At the hearing, the court was not concerned with the potential for harassment, but rather with the plaintiffs' reluctance to vigorously prosecute these class actions. The plaintiffs' failure to show up for the hearings indicates a lack of interest.

Second, the plaintiffs cannot act as representatives for the state and common law claims because these claims vary from state to state. In addition, different state statutes of limitation govern the section 10(b) claims. These differences are discussed more fully in part V, sections C and D.

In *Sanders*, Glenn Sanders stated that he had little or no involvement in preparing the complaint, which was investigated and drafted exclusively by his attorneys. Deposition of Glenn Sanders, pp. 85-86, 92-93. Sanders also was uncertain whether to proceed with this action if the class was not certified. *Id.* at p. 114. Sanders did not know the identity of the individual defendants named in the complaint. *Id.* at pp. 94-96.

Leslie Sanders, the other named plaintiff in the *Sanders* case, indicated that she did not want to be involved in this case and did not agree to become one of the named plaintiffs until counsel for the plaintiffs called her one month before her deposition. Deposition of Leslie Sanders, pp. 49-52. Ms. Sanders did not contribute to the complaint or the amended complaint, and she never saw the amended complaint until a couple of days before the deposition. *Id.* at p. 50. In addition, Ms. Sanders did not know the name of one of the firms that was representing her. *Id.* at p. 3. Furthermore, Ms. Sanders stated that her claim does not concern her initial decision to purchase securities, as the complaint alleges, but that in 1983 Robinson-Humphrey purportedly told her not to sell her securities. *Id.* at pp. 43, 54. Ms. Sanders also did not know the identity of the individual defendants. *Id.* at pp. 55-56. Chip Traynor, the broker who allegedly fraudulently sold securities to Ms. Sanders, still acts as a broker for her and almost all her family. Deposition of Chip Traynor, p. 232. If the Sanders truly felt that their broker defrauded them, presumably he would no longer be their broker.

In *Kirkpatrick*, plaintiff Charles Lindsey purchased limited partnership interests through his brother, a broker for J.C. Bradford. In deposition, Lindsey stated:

Q. Is it your belief that they [the defendants] tried to defraud the investing public, or do you think they're just guilty of mismanagement, or do you have—

A. I don't know. I don't think you can say that somebody was really planning to defraud me. Petro-Lewis was a reputable firm and was on the New York Stock Exchange and what have you. Petro-Lewis is not a fly-by-night. I mean, they were a pretty reputable firm. I don't think Bradford's people kept up with it. That's pure and simple what happened.

Q. You think they were negligent?

A. Absolutely, positively....

Deposition of Charles Lindsey, pp. 60–61. Lindsey was careful to point out that the allegations of paragraph 5 of the complaint—to the effect that he purchased pursuant to a prospectus—were in error. While insisting that he would let the chips fall where they might against his brother, Lindsey admitted that his family would be upset if he sued his brother. *Id.* at p. 57.

Similarly, plaintiff Suzanne Kirkpatrick still has an account with the person from whom she purchased her partnership interests in Petro-Lewis, although he no longer works for J.C. Bradford. Deposition of Suzanne J. Kirkpatrick, p. 6. In her deposition, Kirkpatrick stated:

Q. ... Is it your belief or your contention that Bradford was trying to defraud you or was trying to sell you something they knew or should have known was no good?

A. No, sir, but I think they should have done their homework before they made the sales.

Q. You think they were negligent in failing to find this out?

A. Yes.

*Id.* at p. 69.

The other named plaintiff in *Kirkpatrick*, Dorothy Casler, purchased her interests in Petro-Lewis from her son. In deposition, she testified:

Q. Have you sued your son over his selling you this Petro-Lewis?

A. No.

Q. Well, you sued Bradford and I was wondering if you sued him since he's the one that put you into it?

A. No.

Q. Is there any reason why you haven't?

A. Because I think he—in his mind he thought it was the best thing that I could do.

Deposition of Dorothy Casler, p. 8. In addition, Casler's son did not disclose to her the risks which, as the complaint alleges, were disclosed in the prospectus concerning a possible decline in the price of oil and the fact that Petro-Lewis was borrowing money to make the property acquisitions. *Id.* at pp. 48–49. In fact, Casler says she thought there were virtually no risks involved because her son knew that she could not take risks. *Id.* at p. 38. Casler expressed shock at the possibility that her claim might give rise to a lawsuit against her son. *Id.* at p. 42.

In summary, the court finds that the plaintiffs in their deposition testimony in *Sanders* and *Kirkpatrick* demonstrate a lack of interest in the vigorous prosecution of this lawsuit. Glenn and Leslie Sanders are not involved or knowledgeable enough to effectively prosecute a class action. *See Schatzman v. Talley*, 91 F.R.D. 270, 273 (N.D.Ga.1981). The plaintiffs in *Kirkpatrick* do not believe, or are unwilling to prosecute, their fraud claims. For these reasons, the plaintiffs would not fairly and adequately represent the other class members. *See Rothenberg v. Security Management Co.*, 667 F.2d 958, 962–63 (11th Cir.1982).

### V. RULE 23(b)

■ If the four prerequisites of Rule 23(a) are satisfied, a suit may be maintained as a class action only if it falls within one of the three categories set forth in Rule 23(b). *See George v. United Federal Savings and Loan Association*, 63 F.R.D. 631, 636 (N.D.Ga.1974). Even assuming that the plaintiffs satisfy Rule 23(a)(4), the court holds that they cannot satisfy Rule 23(b).

Rule 23(b) prescribes the various types of class actions that are permitted under the Federal Rules. It provides:

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

At the outset, the court notes that the parties do not rely on or discuss Rule 23(b)(1) or (b)(2). Because the plaintiffs do not allege that these subdivisions apply,[11] the court turns to subdivision (b)(3).

Rule 23(b)(3) sets out two prerequisites that the plaintiffs must satisfy to maintain a class action under this subdivision: (1) questions of law or fact common to the members of the class must *predominate* over any questions affecting only individual members; and (2) the class action must be superior to other available methods for the fair and efficient adjudication of the controversy. A plaintiff must satisfy Rule 23(b)(3) to have a class action that involves securities fraud.

The court holds that because common questions of law and fact do not predominate, the plaintiffs cannot satisfy Rule 23(b)(3). The court arrives at this conclusion for four reasons. First, and most importantly, the alleged statements upon which the plaintiffs relied in purchasing Petro-Lewis securities were primarily oral rather than written and misrepresentations rather than omissions. The court, therefore, cannot imply the element of reliance central to the issue of this case. "[T]he most significant problem facing the [class] representatives under subdivision (b)(3) is to demonstrate that the representations made to and the reliance by each of the class members is not so divergent that common questions do not predominate." 7A C. Wright & A. Miller, *Federal Practice and Procedure: Civil,* § 1781 at 90 (1972). The plaintiffs have failed to overcome this problem. Second, many of the potential class members have signed arbitration agreements that oblige them to arbitrate their grievances. Third, the statute of limitations for section 10(b) varies from state to state, and in some states it is unknown. Last, because the purchasers of Petro-Lewis limited partnerships are from most of the 50 states, this court would be forced to apply the state and common law from each state in which a potential class member resides. The court addresses each of these problems in turn.

---

11. The plaintiffs may not rely on Rule 23(b)(2) because this subdivision only applies to injunctive or declaratory relief. "The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." Rule 23, Notes of Advisory Committee. The plaintiffs seek money damages.

### A. Oral Representations and Reliance

The principal claims asserted by the plaintiffs are based upon alleged violations of section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934. To support a claim under section 10(b) and Rule 10b–5 the plaintiff must establish the following elements: (1) that a misstatement or omission has been made, (2) that the misstatement or omission pertains to material facts, (3) that the misstatement or omission was made with scienter, (4) that the plaintiff relied upon the misstatement or omission, and (5) that the misstatement or omission was the proximate cause of the injury to the plaintiff. *Huddleston v. Herman & MacLean,* 640 F.2d 534 (5th Cir. 1981) (*en banc*), *modified on other grounds,* 650 F.2d 815 (1981), *aff'd in part and rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Each of these elements of a section 10(b) and Rule 10b–5 cause of action must be proven for the plaintiff to prevail.

Although a determination of class action generally does not permit investigation into the merits of a case, it is necessary in this situation in order to determine whether the common questions of law or fact predominate over individual questions of law or fact concerning the section 10(b) and Rule 10b–5 claims. The key factor in determining whether class action is appropriate is the matter of reliance. If it is determined that reliance is common to all members of the class, the class action will stand. If, however, reliance is found to be an individual element whereby each plaintiff must prove reliance upon misstatements and omissions, the class action status will not be available.

The element of reliance and its effect upon class certification have been handled by the courts in several different fashions. Reliance may be implied where the plaintiff alleges a course of fraudulent conduct common to all members of the class where misrepresentations or omissions upon which the fraud is based are uniform throughout the class. *In re Home Stake Production Co. Securities Litigation,* 76 F.R.D. 351 (N.D.Okla.1977). It may be implied where the course of fraudulent conduct is perpetrated by way of oral representations where information material to the decision to purchase has been omitted. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Kennedy v. Tallant,* 710 F.2d 711 (11th Cir.1983); *Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) (*en banc*), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983). Finally, reliance may be implied under the "Fraud on the Market" theory. *Lipton v. Documation, Inc.,* 734 F.2d 740 (11th Cir.1984).

In an attempt to refute the requirement of reliance, the plaintiffs allege the following: (1) that the defendants have perpetrated a course of fraudulent conduct upon all members of the proposed classes by use of a uniform sales pitch in marketing Petro-Lewis securities, (2) that this is not a case of oral misrepresentations and omissions but one of written misrepresentations and omissions found in the prospectuses and other written materials issued by Petro-Lewis, and (3) that the defendants have perpetrated a "Fraud on the Market" with regard to Petro-Lewis securities.

The court finds that none of these allegations falls within the bounds required for implying the element of reliance necessary to justify class certification in a section 10(b) and Rule 10b–5 action.

The plaintiffs state that the defendants followed a fraudulent course of conduct in making sales of Petro-Lewis securities to the potential class members and rely upon *Kennedy* and *Home Stake* to support these allegations. A distinction must be made, however, between these two cases and the instant case. First, the suits in *Home Stake* and *Kennedy* were brought against the company issuing the securities involved rather than against the broker selling the securities. Second, the securities in *Home Stake* and *Kennedy* were sold by salesmen employed by the company issuing the securities rather than by brokerage firms promoting sales between the issuer and the purchaser as in the instant case. In cir-

cumstances such as those in *Home Stake* and *Kennedy,* the issuer has direct control over what information is disseminated to the purchasers as well as control over the means by which the information is transferred. In *Home Stake,* for instance, the issuer had a sales force promoting sales by use of a "black book," which was the central selling tool in each presentation. The plaintiffs in the instant cases allege that a uniform sales program was used in presentations to prospective buyers who are potential class members. However, all the briefs, as well as information in the complaint, presented by the plaintiffs in support of a class action status assert facts pertinent only to the sales pitch by Petro-Lewis to each of the individual brokerage houses. Granted, the defendants could have used the sales materials presented by Petro-Lewis (and in the case of plaintiff Parker, did by way of a joint seminar presented by Petro-Lewis and Paine Webber). However, the plaintiffs have presented no materials whatsoever, developed through discovery or asserted by the individual plaintiffs, indicating a uniform presentation or "sales pitch" by the defendants to all the members of the proposed classes. Had the plaintiffs shown evidence of the uniform sales pitch by each of the defendants to the members of the proposed classes, then a fraudulent course of conduct by the defendants might be at issue and class action status might be warranted. The sales suggestions presented by Petro-Lewis to the defendant brokerage firms provide no guarantee that the brokerage firms would use the sales materials provided. The plaintiffs have failed to show that the materials provided were in fact used on a uniform basis or used at all by the defendants. The alleged common course of conduct was conduct between Petro-Lewis and the defendants rather than the defendants and the plaintiffs and cannot form the basis for dispensing with the reliance required in a section 10(b) and Rule 10b–5 action. Hence, the uniform scheme required to assume the element of reliance has not been alleged.

The plaintiffs contend that the defendants misrepresented and omitted certain facts from presentations made in sales of the Petro-Lewis securities and rely upon the prospectuses as the uniform sales tool used in the misrepresentations and omissions. The named plaintiffs acknowledge that they either did not read the prospectuses and relied entirely upon the information provided by their brokers,[12] or state that they read or looked through the prospectuses, but could not recall any specifics and also relied upon representations made by their brokers in deciding to purchase the Petro-Lewis partnership interests.[13] The plaintiffs assert that because the prospec-

---

12. In *Sanders v. Robinson-Humphrey,* both plaintiffs stated that they did not read the prospectus and in fact relied totally upon oral representations by their brokers. *See* Deposition of Glenn Sanders, pp. 28–32, 35–36, 42, 46–49, 51–56; deposition of Leslie Sanders, pp. 19–29, 24–26, 31–32, 46. In *Kirkpatrick v. J.C. Bradford,* plaintiff Suzanne Kirkpatrick did not read a prospectus until after she made her purchase, deposition of Suzanne Kirkpatrick, p. 38, and relied totally upon J.C. Bradford's remarks concerning the Petro-Lewis investment. *Id.* at pp. 71–72. Plaintiff Dorothy Casler relied totally on her son, a broker for J.C. Bradford, in making her decision to purchase. Deposition of Dorothy Casler, pp. 35–36. As to plaintiff Charles Lindsey, Mr. Lindsey invested through his brother and relied totally upon what his brother told him. Deposition of Charles Lindsey p. 8.

13. In *Parker v. Paine Webber,* both plaintiffs state that they looked at the prospectus. However, James Smith did not review the prospectus until after his first purchase of Petro-Lewis securities, deposition of James S. Smith, pp. 193–94, and when he finally did review the prospectus, was unable to point to specifics in the prospectus. When asked which portions of the prospectus were false and misleading, Mr. Smith stated, "I'm not able to do that, because it was an overall impression I got after talking to my broker, after this (indicating), it was may overall impression of the investment rather than the specifics from this document." *Id.* at p. 234. When Mr. Parker was questioned about reading the prospectus he stated, "I reviewed the prospectus. To be frank, you know, I was more interested in the pamphlet they had with all the pretty pictures in it." Deposition of Tommy E. Parker, p. 123. Smith later stated that in making his decision to purchase he relied on what Petro-Lewis and his broker said at the seminar which Mr. Parker attended. *Id.* at p. 39.

tuses were used in the sales of the securities, the misrepresentations and omissions presented in them provide a uniform presentation upon which common reliance can be based, and class certification need not depend upon whether the plaintiffs actually read the prospectuses. *Kennedy v. Tallant,* 710 F.2d 711 (11th Cir.1983); *Affiliate Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741; *Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) *(en banc), cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983); *Sharp v. Coopers & Lybrand,* 70 F.R.D. 544 (E.D. Pa.1976). If misrepresentations are both oral and written and the plaintiffs relied upon the oral representations of their brokers, there is no standardized communication by the defendants and no basis for the assumption of reliance. *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880 (5th Cir.1973). The distinction here is that the cases relied upon by the plaintiffs were omissions cases whereas the instant cases primarily involve misrepresentations. The allegations stated in the complaints are almost entirely allegations of misrepresentations of material information presented in the prospectuses rather than the omission of material facts in the sale of Petro-Lewis securities. Where the misrepresentations and omissions are oral, precluding the uniformity of sales, rather than written, the court may infer reliance by the plaintiff in a section 10(b) and Rule 10b–5 action only where the defendant fails to disclose information material to the sale of the security. Where failure to disclose is material, the case is an omissions case. *Affiliated Ute, supra; Huddleston v. Herman & MacLean,* 640 F.2d 534 (5th Cir. 1981) *(en banc modified on other grounds,* 650 F.2d 815 (1981), *aff'd in part and rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)); *Simon, supra; Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981). "Where a 10b–5 action alleges defendant made positive misrepresentations of material information, proof of reliance by the plaintiff upon misrepresentations is required. Upon an absence of proof on the issue, plaintiff loses. On the other hand, where a plaintiff alleges deception by defendant's nondisclosure of material information, the *Ute* presumption obviates the need for plaintiff to prove actual reliance on the omitted information." *Rifkin v. Crow,* 574 F.2d 256, 262 (5th Cir. 1978) (footnote omitted).

This court has determined that the instant case is primarily one of a "misstatement or failure to state the facts necessary to make those statements made not misleading." *Huddleston,* 640 F.2d at 548. Because this case is one of misrepresentation, it is necessary that each class member prove his individual reliance upon the material misrepresentations made to him. Certification as a class action, therefore, is highly inappropriate. *Cavalier Carpets, Inc. v. Caylor,* 746 F.2d 749 (11th Cir.1984); *Huddleston, supra.*

The plaintiffs' final attempt to procure a basis for the assumption of reliance is based upon the Fraud on the Market theory. If the Fraud on the Market theory is accepted by the court, the element of reliance in a section 10(b) and Rule 10b–5 action is assumed because the reliance is based upon the integrity of the open market and sales of the security on the open market. *Lipton v. Documation, Inc.,* 734 F.2d 740 (11th Cir.1984). This court has recognized the Fraud on the Market theory in *Shores* and *Lipton,* but has applied the theory only to securities traded on the open market. Although *Shores* involved the sales of new issue bonds, the bonds were traded on the secondary market after the original issue was released. Additionally, the plaintiff in *Shores* alleged that, but for the fraud, the bonds would not have been offered at all. Proof that they would have been issued at a higher or lower price would not have been sufficient for the plaintiff to recover.

The case at bar does not fall under the realm of the Fraud on the Market theory of *Shores* or *Lipton.* In the current action the plaintiffs do not allege that the securities would not have been sold had the misrepresentations not been present, nor have they shown that the securities were sold on

the open market at the time of the purchases. The securities in fact were limited partnerships where liquidity was spelled out in the prospectus as being nonexistent except for the ability of Petro-Lewis to repurchase the interest. Petro-Lewis additionally set the price, the number of sales that were to be made, and also looked at the ability of each purchaser to withstand any losses that might result from a purchase of this nature. Hence these securities were not traded on the open market where such factors would not be present. In an open market the issuer would have no contact whatsoever with the purchaser, the issuer would not set the price for sale of the securities, and the issuer would not provide for repurchase of the security in the event the purchaser desired to sell. Moreover, in an open market, in order to sell, the purchaser only would have to set a price for sale of the security and have a broker place the order. These characteristics of an open market are not present in this cause of action. The plaintiffs, therefore, cannot rely upon the Fraud on the Market theory to provide the necessary reliance element of section 10(b) and Rule 10b–5 of the 1934 Act.

The court finds that the plaintiffs have not met the reliance requirement of section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934 and, therefore, cannot meet the predominance requirement of Rule 23(b)(3). This is an oral misrepresentation case and because the reliance requirement cannot be implied, each member of the class would be required to prove his reliance upon the misrepresentations and omissions in the purchase of Petro-Lewis securities.

### B. *Arbitration*

In addition to the requirement of predominance of common issues over individual issues, Rule 23(b)(3) requires that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." At issue in both of these contexts is the right of the defendants to enforce arbitration agreements with members of the proposed classes. Each defendant has available the arbitration forum with some members of the proposed classes.[14]

As to all state claims where defendants have executed an arbitration agreement with purchasers of Petro-Lewis securities who fall into the proposed classes, it has been determined that the "Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims where one of the parties files a motion to compel, even where the result would be the possible inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). Should any of the defendants move to arbitrate any of the class members' claims, where a valid arbitration agreement is in existence, the court would be required to compel arbitration and stay the current proceedings until such time as the arbitration is completed with regard to the state issues involved therein. *See Harris v. Shearson Hayden Stone, Inc.*, 82 A.D.2d 87, 441 N.Y.S.2d 70 (1981), aff'd, 56 N.Y.2d 62, 450 N.Y.S.2d 482, 435 N.E.2d 1097 (1982); *Vernon v. Drexel Burnham & Co.*, 52 Cal.App.3d 706, 125 Cal.Rptr. 147 (1975). Such a situation would be untenable, particularly in *Sanders*, where upwards of 70 percent of the proposed class members have executed arbitration agreements.

■ The plaintiffs assert that, because the Securities Act of 1933 is part of the litigation, arbitration of the federal claims is not enforceable. The 1933 Act claims are not subject to arbitration. *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). However, the 1933 Act claims

---

**14.** Each of the defendants has alleged the existence of arbitration agreements with some members of the proposed classes. Although defendants Paine Webber and J.C. Bradford and Co. have not indicated the numbers that could be potentially involved in arbitration, Robinson-Humphrey has stated that those class members that could reach arbitration are between 50 and 70 percent of the total number of potential class members in the *Sanders v. Robinson-Humphrey* action.

do not comprise the major issues in these cases. The plaintiffs contend that the claims under section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934 are also not subject to arbitration pursuant to the Eleventh Circuit ruling in *Gorman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 780 F.2d 1032 (11th Cir.1985). That case, however, is now *en banc* and no longer binding upon this court. This court is of the opinion, as stated in *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Civil Action No. C83–685A (N.D.Ga. May 16, 1985), and *Chandler v. Drexel Burnham Lambert, Inc.*, 633 F.Supp. 760 (N.D.Ga.1985), that the 1934 Act claims are subject to the Arbitration Act and to arbitration agreements executed by the defendants and potential class members and must be sent, along with any state claims, to arbitration upon motion by the defendants. This opinion is supported by a number of recent Supreme Court cases including *Byrd, Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, ―― U.S. ――, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The Supreme Court has established a strong tendency to favor use of the arbitration forum in the context of federal statutory claims. Indeed, in *Mitsubishi* the Court stated:

> We find no warrant in the Arbitration Act for implying in every contract within its ken a presumption against arbitration of statutory claims.... Nor is there any reason to depart from the federal policy favoring arbitration where a party bound by an arbitration agreement raises claims founded on statutory rights. *Mitsubishi*, 105 S.Ct. at 3355.

This policy favoring the arbitration agreement is based upon the " 'preeminent concern ... to enforce private agreements into which parties had entered,' a concern which 'requires that we rigorously enforce agreements to arbitrate.' " *Id.* at 3356, citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985).

In conjunction with the strong tendency of the courts to favor enforcement of arbitration agreements is the express provision in 28 U.S.C. § 2072 of the enabling act of the Federal Rules of Civil Procedure whereby Congress stated that the "rules shall not abridge, enlarge, or modify any substantive right ..." Rule 23 is a procedural device provided by Congress to allow the court discretion in applying class action status to plaintiffs and those other class members similarly situated. The right to arbitration is contractual and therefore substantive. Congress did not intend that procedural class action certification be used to abrogate the contractual rights employed in the execution of the arbitration agreements by the defendants and some members of the proposed classes. To allow class certification where such arbitration agreements exist would not only be unduly burdensome and inefficient should defendants move to compel arbitration but would also violate the requirement of Rule 23(b)(3) that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

## C. *Rule 10b–5 Statute of Limitations*

Although the moment at which a section 10(b) action accrues and the statute of limitations begins to run is a matter of federal law, the time period itself is taken from state law. *Kennedy v. Tallant*, 710 F.2d 711, 716 (11th Cir.1983). Under *Phillips Petroleum Co. v. Shutts*, ―― U.S. ――, 105 S.Ct. 2965, 2980, 86 L.Ed.2d 628 (1985), this court "may not take a transaction with little or no relationship to [Georgia] and apply [Georgia law] in order to satisfy the procedural requirement that there be a 'common question of law.' " If the court certifies these class actions, it must apply the state statute of limitations for every state in which a class member resides. This court has held that where "the applicable statute of limitations ... is dependent on state law ... [the claims] are inappropriate for treatment as class actions because they present substantial and predominate [*sic*] individual questions." *El-*

*ster v. Alexander,* 76 F.R.D. 440, 442 (N.D. Ga.1977), *appeal dismissed,* 608 F.2d 196 (5th Cir.1979).

The time period within which a section 10(b) action must be brought varies from state to state. Courts have applied a one-year statute of limitations, *see, e.g., O'Hara v. Kovens,* 625 F.2d 15, 17 (4th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981) (Maryland); a two-year statute of limitations, *see, e.g., Diamond v. Lamotte,* 709 F.2d 1419, 1424 (11th Cir.1983) (Georgia); *Gurley v. Documation, Inc.,* 674 F.2d 253, 259 (4th Cir. 1982) (Virginia); *White v. Sanders,* 650 F.2d 627, 633 (5th Cir.1981) (Alabama); *Cook v. Avien, Inc.,* 573 F.2d 685, 694 (1st Cir.1978) (Massachusetts); *Dupuy v. Dupuy,* 551 F.2d 1005, 1024 n. 31 (5th Cir.), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977) (Louisiana); *Nortek v. Alexander Grant & Co.,* 532 F.2d 1013, 1015 (5th Cir.1976), *cert. denied,* 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977) (Florida); *Dirksen v. Hynes & Howes Insurance Counselors, Inc.,* 423 F.Supp. 1290, 1293 & n. 4 (S.D.Iowa 1976) (Iowa); a three-year statute of limitations, *see, e.g., Herm v. Stafford,* 663 F.2d 669, 677–78 (6th Cir.1981) (Kentucky); *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980) (California); *Nemkov v. O'Hare Chicago Corp.,* 592 F.2d 351, 355 (7th Cir.1979) (Illinois); *Hilton v. Mumaw,* 522 F.2d 588, 601 (9th Cir.1975) (Washington); *Burns v. Ersek,* 591 F.Supp. 837, 839 (D.Minn.1984) (Minnesota); *Mid-Carolina Oil, Inc. v. Klippel,* 526 F.Supp. 694, 697 (D.S.C.1981), *aff'd. mem.,* 673 F.2d 1313 (4th Cir.), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982) (South Carolina); *Ohio v. Peterson, Lowry, Rall, Barber & Ross,* 472 F.Supp. 402, 405–06 (D.Colo.1979), *aff'd,* 651 F.2d 687 (10th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981) (Colorado); a four-year statute of limitations, *see, e.g., Gaudin v. KDI Corp.,* 576 F.2d 708, 711–12 (6th Cir.1978) (Ohio);

and a six-year statute of limitations, *see, e.g., Roberts v. Magnetic Metals Co.,* 611 F.2d 450, 452 (3d Cir.1979) (New Jersey); *IDS Progressive Fund, Inc. v. First of Michigan Corp.,* 533 F.2d 340, 344 (6th Cir.1976) (Michigan); *Bartels v. Algonquin Properties Ltd.,* 471 F.Supp. 1132, 1147, 1149 (D.Vt.1979) (Vermont).

In Hawaii, North Dakota, South Dakota, West Virginia, and Wyoming courts have not yet determined the applicable statute of limitations in a section 10(b) case. If this court were to certify a class, it would have to make that determination if a class member resided in one of these states.[15] In several states, the courts have applied different statutes of limitation. For example, in Connecticut the statute of limitations may be two years or three years. *Compare Clute v. Davenport Co.,* 584 F.Supp. 1562, 1577 (D.Conn.1984) (two years) *with Klock v. Lehman Bros. Kuhn Loeb, Inc.,* 584 F.Supp. 210, 215–16 (S.D.N.Y.1984) (holding Connecticut law has three-year statute of limitations). Nevada has a three-year limitation period for fraud, a two-year Blue Sky limitation period for fraud in the sale of securities, and a catch-all limitation period of four years. *See* Nev.Rev.Stat. §§ 11.190, 11.220, 90.200. This court, therefore, would have to determine which Nevada statute to apply. Finally, in Rhode Island, a court has indicated that either a six-year general statute of limitations or a three-year personal injury statute of limitations may apply. *See Holmes v. Bateson,* 583 F.2d 542, 561–62 (1st Cir.1978).

If a class were certified, this court would be the first to determine the statute of limitations for 10(b) actions in numerous states. Given that some states never have ruled on the statute of limitations and other states have applied it with inconsistent results, individual questions of law clearly predominate. In addition, discovery would be necessary to determine what individual

---

15. In *Sanders* the defendants' attorney indicates that his examination of client mailing lists taken from the defendants' business files shows that the defendants sold Petro-Lewis limited partner- ship interests to clients maintaining addresses in 32 states, the District of Columbia, and West Germany. Supplemental Affidavit of Peter J. Anderson, ¶ 3.

brokers told potential class members at a given time, what each and every class member was told by his broker, and what other information these potential class members received and when they received it.

The plaintiffs contend that under the reasoning in *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir.1983), even if some class members are threatened with a potential statute of limitations defense, that problem would not necessarily defeat the availability of the class action suit. *Kennedy* has no bearing on this case because this court is not refusing to certify the classes simply because some class members are threatened with a potential statute of limitations defense. Rather, the court is holding that under the reasoning in *Phillips Petroleum Co. v. Shutts*, —— U.S. ——, 105 S.Ct. 2965, 2980, 86 L.Ed.2d 628 (1985), and *Elster v. Alexander*, 76 F.R.D. 440, 442 (N.D.Ga. 1977), *appeal dismissed*, 608 F.2d 196 (5th Cir.1979), individual questions of law predominate over common questions of law.

### D. *State and Common Law Claims*

The final reason that individual questions of law and fact predominate over questions affecting the potential classes is that the state and common law claims—fraud and deceit, negligence and negligent misrepresentation, and fraudulent concealment and breach of fiduciary duty—require that the court apply the law of every state from which a potential class member resides. In *Sanders* the defendants' attorney indicates that his examination of client mailing lists taken from the defendants' business files shows that the defendants sold Petro-Lewis limited partnership interests to clients maintaining addresses in 32 states, the District of Columbia, and West Germany. Supplemental Affidavit of Peter J. Anderson, ¶ 3. J.C. Bradford and Paine Webber are also national brokerage houses. This court indicated in the hearing that it saw no way of managing these class actions if it had to apply the law of 50 different states, as *Phillips Petroleum Co. v. Shutts*, —— U.S. ——, 105 S.Ct. 2965, 2980, 86 L.Ed.2d 628 (1985), requires. *See* Transcript of hearing February 27, 1986, at p. 115.

In *Shutts* the Supreme Court held that a court "may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'" *Shutts*, 105 S.Ct. at 2980. The Court rejected the Kansas Supreme Court's holding that "in a nationwide class action where procedural due process guarantees of notice and adequate representation were met, the laws of the forum should be applied unless compelling reasons exist for applying a different law." *Id.* at 2981. This court, therefore, would have no choice but to apply the law of each state in which a potential class member resides. In *Elster v. Alexander*, 76 F.R.D. 440, 442 (N.D.Ga. 1977), *appeal dismissed*, 608 F.2d 196 (5th Cir.1979), this court held:

> Plaintiff's allegations of common law fraud raise questions of fact and law under the law of each state in which the class member made a purchase. The complaint alleges that class members reside throughout the county [*sic*]. Considering the size of the potential class to be 8,500 members, it is likely that the claim for relief based upon common law fraud would involve the laws of all 50 states. With no single law governing the entire class, the allegation of common law fraud cannot be shown to warrant class treatment. *See Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir.1973); *King v. Sharp*, 63 F.R.D. 60 (N.D.Tex.1974); *Adise v. Mather*, 56 F.R.D. 492 (D.Col.1972).

This court is bound by the decision in *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 883 (5th Cir. 1973), in which the court held:

> [T]he geographic dispersion of the alleged representations would bring into issue various state common law standards. With no single law governing the entire class, common issues of law cannot be shown to warrant Rule 23 treatment.

Numerous courts have followed the reasoning in *Simon* and *Elster.* *See, e.g., Zandman v. Joseph*, 102 F.R.D. 924, 929 (N.D.Ind.1984) (holding that "common issues would not predominate in that the fraud issues would have to be tried in accordance with the substantive law of the state of each class member."); *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 95 F.R.D. 168, 177–78 (D.Del.1982) (refusing to certify class action because it would involve applying the law of more than one state); *Seiden v. Nicholson*, 69 F.R.D. 681, 686 (N.D.Ill.1976) ("Obviously, a common law fraud claim raises issues which are personal to each individual plaintiff and, therefore, not common to the class. Since individual issues predominate on common law fraud claims, ... these claims should not be certified for class determination."); *In re U.S. Financial Securities Litigation*, 64 F.R.D. 443, 455 (S.D.Cal.1974) ("The common law fraud claims brought under pendent jurisdiction are also inappropriate because individual questions of law would predominate if it were necessary to canvass the law of every state in which a purchase of debentures was made.").[16]

The plaintiffs contend that the elements of a fraud claim in each state are basically the same. For this reason, they assert, the court would have no difficulty applying the law of each of the 50 states. While this court does not intend to survey the law of fraud in all 50 states, several major differences do exist. For example, in Alabama a plaintiff does not need to prove that the defendant knew that his representation was false or that he intended to make a false representation, *see Fountain-Lowery Enterprises v. Williams*, 424 So.2d 581, 585 (Ala.1982), while in Florida the defendant must knowingly and purposefully make a false statement, *see Osborne v. Delta Maintenance and Welding, Inc.*, 365 So.2d 425, 427 (Fla.App.1978). In Mississippi, Ohio, South Carolina, and Tennessee, a plaintiff must prove that he had the right

to rely on the defendant's representations, *see, e.g., Dunn Appraisal Co. v. Honeywell Information Systems, Inc.*, 687 F.2d 877, 882 (6th Cir.1982) (Ohio); *Miller v. Premier Corp.*, 608 F.2d 973, 980 (4th Cir. 1979) (South Carolina); *Edwards v. Travelers Insurance of Hartford, Connecticut*, 563 F.2d 105, 113 (6th Cir.1977) (Tennessee); *Franklin v. Lovitt Equipment Co.*, 420 So.2d 1370, 1373 (Miss.1982), while in other states the plaintiff does not need to prove that he had the right to rely on the defendant's statements, *see, e.g., Keck v. Wacker*, 413 F.Supp. 1377, 1383 (E.D.Ky. 1976); *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex.1977); *Jefferson Standard Life Insurance Co. Hendrick*, 27 S.E.2d 198, 202 (Va.1943).

A third area in which the requirements of the various states differ in fraud actions is that the element of scienter varies from state to state. Kentucky, Ohio, and Texas require knowledge of falsity or reckless disregard for the truth. *See Dunn Appraisal Co. v. Honeywell Information Systems, Inc.*, 687 F.2d 877, 882 (6th Cir. 1982); *Keck v. Wacker*, 413 F.Supp. 1377, 1383 (E.D.Ky.1976); *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex.1977). Georgia and North Carolina require that the defendant knew the representations were false. *See Grant v. Aulicky*, 161 Ga.App. 817, 819, 290 S.E.2d 107, 109 (1982); *Stone v. Martin*, 56 N.C.App. 473, 289 S.E.2d 898, 901–02 (1982). In Virginia intention is immaterial, *Ware v. Scott*, 220 Va. 317, 257 S.E.2d 855, 857 n. 2 (1979), while in Tennessee and South Carolina intention is a necessary element of a fraud action. *See Cumberland Portland Cement Co. v. R.F.C.*, 140 F.Supp. 739, 750 (E.D.Tenn.1953); *Lancaster v. Smithco, Inc.*, 238 S.C. 15, 119 S.E.2d 145, 145 (1961). In Louisiana, the intention must be either to obtain an unjust advantage for one party or to cause loss or inconvenience to the

---

**16.** Several courts have certified class actions that include common law fraud claims. *See, e.g., Steiner v. Equimark Corp.*, 96 F.R.D. 603, 606 (W.D.Pa.1983); *Dekro v. Stern Bros. & Co.*, 540 F.Supp. 406, 418 (W.D.Mo.1982). This court does not agree with and is not bound by the reasoning in these decisions.

other. La.Civ.Code Ann. art. 1953 (West 1986).

This brief survey of the law of fraud indicates that this court would have to analyze and interpret the laws of each state for all three state and common law claims. More importantly, a jury would have to receive a new set of instructions and apply a different standard of law for each state in which a potential class member resides. Clearly, individual questions of law and fact predominate over common questions for these pendent claims.

## VI. SUMMARY

In summary, because the plaintiffs have failed to meet the requirements of Rule 23(a)(4) and Rule 23(b)(3), the motions for class certification are DENIED. The plaintiffs may proceed individually against the defendants but may not represent the proposed classes. Pursuant to Rule 23(d)(4), the court ORDERS that the pleadings be amended to strike all references to class action and the representation of absent individuals.